AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

ORIGINAL
FILED
APR 04 2018
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| | ) Case No. |
| 3625 Arden Villa Place, Roseville, CA 95747 | ) 2 18 - SW 0 3 2 4 AC |
| | ) |
| | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

**FILED**

**JUN 1 8 2019**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY:_____
DEPUTY CLERK

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC §§ 922(b)(5), 922(m), 924(a)(3), 1028(a)(7), 1028A, 1029(a)(5), 1341, 1343 | Failure by federally licensed dealer to keep proper records, making a false entry or failing to make entry in records by federal firearms dealer, knowing making of false statements by licensee, ID theft, Aggravated ID theft, access device fraud, mail fraud, wire fraud |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Daniel Bietz, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____4/4/18____

_____
*Judge's signature*

City and state:  Sacramento, California

Allison Claire, U.S. Magistrate Judge
*Printed name and title*

1  McGREGOR W. SCOTT
   United States Attorney
2  MICHAEL D. ANDERSON
   SHELLEY D. WEGER
3  Assistant United States Attorney
   501 I Street, Suite 10-100
4  Sacramento, CA 95814
   Telephone: (916) 554-2700
5  Facsimile:  (916) 554-2900

6  Attorneys for Plaintiff
   United States of America

7

8              IN THE UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11 In the Matter of the Search of:          CASE NO.

12 3625 Arden Villa Place, Roseville, CA 95747    AFFIDAVIT IN SUPPORT OF AN APPLICATION
                                            UNDER RULE 41 FOR A WARRANT TO
                                            SEARCH AND SEIZE
13

14

15          I, Daniel Bietz, being first duly sworn, hereby depose and state as follows:

16          I.      **INTRODUCTION AND AGENT BACKGROUND**

17          1.      I am a Special Agent with the United States Department of Justice, Bureau of Alcohol,

18  Tobacco, Firearms and Explosives ("ATF"), assigned to the Sacramento Field Office. I have been

19  employed with the ATF since May 2016. I am a graduate of the Federal Law Enforcement Training

20  Center and the ATF National Academy. While there, I received 7 months of training in the investigative

21  techniques and enforcement of federal firearms and explosives law. Additionally, I previously served as

22  a Combat Engineer in the United States Army and California National Guard earning the rank of

23  Sergeant. As a Combat Engineer, I gained significant experience in the identification, maintenance and

24  use of both firearms and explosives. My current duties and responsibilities with the ATF include

25  investigating violations of federal criminal laws contained in Title 18 of the United States Code relating

26  to firearms.

27          2.      This affidavit is submitted in support of an application for a warrant to search the

28  following location for the following items:

   AFFIDAVIT                                    1

a) 3625 Arden Villa Place, Roseville, California 95747 ("TARGET LOCATION"), the residence of Joseph J. DEASER and ▮▮▮▮▮▮, as further described in **Attachment A**, which is fully incorporated by reference;

3. This Affidavit is made in support of an application for a search warrant for the TARGET LOCATION, to search for and seize property that constitutes evidence of the commission of a criminal offense, contraband, the fruits of a crime, and/or things otherwise criminally possessed and property designed or intended for use or which is or has been used as the means of committing a criminal offense. The items to be searched for and seized are listed in Attachment B, which is incorporated by reference. The violations of law are believed to be: 18 U.S.C. §§ 922(b)(5) (Failure by Federally Licensed Dealer to Keep Proper Records), 922(m) (making a false entry or failing to make entry in records by Federal Firearms Dealer), 924(a)(3) (knowing making of false statements by licensee), 1028(a)(7) (identity theft), 1028A (aggravated identity theft), 1029(a)(5) (access device fraud), 1341 (mail fraud) and 1343 (wire fraud).

4. Because this Affidavit is being submitted for the limited purpose of securing authorization for the requested search warrant, I have not included each and every fact known about this investigation. I have only set forth those facts that are believed to be necessary to establish probable cause that evidence of violations of 18 U.S.C. §§ 922(b)(5) (Failure by Federally Licensed Dealer to Keep Proper Records), 922(m) (making a false entry or failing to make entry in records by Federal Firearms Dealer), 924(a)(3) (knowing making of false statements by licensee), 1028(a)(7) (identity theft), 1028A (aggravated identity theft), 1029(a)(5) (access device fraud), 1341 (mail fraud) and 1343 (wire fraud) are located at the TARGET LOCATION. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

5. The statements contained in this Affidavit are based, in part on, information provided by ATF Special Agents, written reports and information about this investigation that I have received directly or indirectly from other law enforcement agents, statements of witnesses, the results of physical surveillance conducted by law enforcement agents, public records, information received from the California Department of Justice, as well as my own investigation, training and experience.

## II.    APPLICABLE LAW

6.    **Title 18, United States Code § 922(b)(5)** makes it unlawful, in relevant part, for any licensed dealer to sell or deliver any firearm to any person unless the licensee notes in its records, required to be kept pursuant to section 923 of Title 18, the name, age, and place of residence of such person.

7.    **Title 18, United States Code § 922(m)** makes it unlawful for any "licensed dealer . . . knowingly to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain any record which is required to be kept pursuant to section 923 of title 18 or regulations promulgated thereunder.

8.    **Title 18, United States Code § 924(a)(3)** provides in relevant part that any licensed dealer who knowingly makes any false statement or representation with respect to the information required by the provisions of this chapter [Chapter 44] to be kept in the record of a person licensed under this chapter, or violates subsection (m) of section 922, shall be fined under this title, imprisoned not more than one year, or both.

9.    **Title 18, United States Code § 1028(a)(7)** makes it a felony to knowingly transfer, possess, or use without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law or a felony under applicable State law.

10.    **Title 18, United States Code § 1028A** provides, in relevant part, that "whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." The felonies enumerated in subsection (c) include, violations of Title 18: section 922(a)(6) relating to false statements in connection with the acquisition of a firearm, sections 1028 and 1029, except section 1028(a)(7), relating to identity and access device fraud, and sections 1341 (mail fraud) and 1343 (wire fraud).

11.    **Title 18, United States Code § 1029(a)(5)** in relevant part makes it a felony to "knowingly and with intent to defraud effect[] transactions with 1 or more access devices issued to another person or persons, to receive payment or any other thing of value during any 1-year period the

3

1 | aggregate value of which is equal to or greater than $1,000.

2 |     12.   **Title 18, United States Code § 1341** makes it a felony to devise or intend to devise a
3 | scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent
4 | pretenses, representations, or promises, and for the purpose of executing the scheme deposits or causes
5 | to be deposited any matter or thing to be sent or delivered by the United States Postal Service or any
6 | private or commercial interstate carrier or knowingly causes to be delivered by mail or any such carrier
7 | according to the direction thereon.

8 |     13.   **Title 18, United States Code § 1343** in relevant part makes it a felony to devise or intend
9 | to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or
10 | fraudulent pretenses, representations, or promises, and for the purpose of executing the scheme or
11 | artifice transmits or causes to be transmitted by means of wire, radio, or television communication in
12 | interstate or foreign commerce, any writings, signs, signals, pictures or sounds.

13 | **III.    CASE BACKGROUND AND INVESTIGATIVE SUMMARY**

14 |     14.   This case is an investigation into allegations that Joseph John DEASER IV (DOB:
15 | XX/XX/1970), through his business(es) and Federal Firearm Licensee(s) ("FFL"), is purchasing Non-
16 | Roster handguns in the name of law enforcement officers without the officers' knowledge or consent
17 | and then, within a short period of time, selling or transferring the Non-Roster guns to non-law
18 | enforcement individuals (including himself and his            , who could not otherwise
19 | purchase new Non-Roster handguns under California law.

20 |     15.   On April 2, 1028, the Honorable Edmund F. Brennan issued a warrant for the premises
21 | located at 2001 Opportunity Drive, Roseville, California, commonly known as the Capital Gun Club.
22 | This address is associated with several federal firearm licenses and business entities associated with
23 | Joseph DEASER and/or        . The affidavit in support of that warrant is attached hereto as
24 | Exhibit A and hereby incorporated fully by reference.

25 |     16.   On April 4, 2018, I along with other agents from ATF and CA DOJ executed the warrant
26 | for 2001 Opportunity Drive, CA.

27 |     17.   During the search, law enforcement identified seventeen assault weapons, which are
28 | defined by and prohibited under California State Law in violation of CA PC Section 30605(a). In

1 addition, eight large capacity magazine conversion kits were located, which are also defined by and

2 prohibited in the State of California, in violation of CA PC Section 32311.

3     18.   DEASER consented to a voluntary interview. DEASER stated that he has filled out

4 firearm transaction forms, such as the Form 4473 and DROS forms, for customers, however, he did not

5 specifically admit to signing customers' names on these forms. When asked if any of the fingerprints on

6 the DROS forms relating to transactions involving Non-Roster firearms would be identified as his

7 fingerprints, he said they would not. I then told DEASER that fingerprint analysis indicated that many

8 of the fingerprints on the DROS forms were his. DEASER said, "well," and then provided no further

9 response.

10     19.   DEASER stated that he lives at 3625 Arden Villa Place, Roseville, California. He stated

11 that he uses a computer at that residence to purchase firearms on behalf of the business. He further

12 stated that he does not take paperwork from the business home.

13     20.   Based on my knowledge, training and experience, I know that computers can be used to

14 store business information and records. I also know that files or remnants of such files can be recovered

15 months or even years after they have been downloaded onto a storage medium, deleted, or viewed via

16 the Internet.

17     21.   Based on my knowledge, training and experience, I know that as a matter of business

18 practice and as a result of state and federal record keeping requirements that require FFLs to document

19 each purchase and sale of a firearm, FFLs typically keep records of transactions at the locations where

20 the transactions are being performed. Such records include, but are not limited to notes, records of

21 payment, order forms, and invoices, and may be kept on a computer or other storage media, in hard

22 copy, or both.

23     22.   As DEASER stated during the interview, he uses his home computer to purchase firearms

24 for his business, and thus, there is likely to be records relating to firearm transactions on his home

25 computer and inside his residence.

26     23.   During the search of 2001 Opportunity Drive, only two (2) of the 12 Non-Roster firearms

27 that are known to have been purchased by DEASER were located. DEASER's counsel arrived during

28 the execution of the search at 2001 Opportunity Drive, and indicated that the firearms were not in

                5

1   Capital Gun Club, but that they could be turned over to ATF within 24-48 hours.

2       24.    Based on my knowledge, training and experience, I know that individuals typically keep

3   firearms registered in their name at their place of residence.  I also know that individuals tend to treat

4   firearm collections as prized possessions and therefore, keep firearms within safes and lock boxes in

5   their home among other valued items.  Since ten (10) of the Non-Roster firearms purchased by

6   DEASER are not at Capital Gun Club, they are likely to be found in DEASER's residence.

7   **Additional Information Regarding DEASER's Residence**

8       25.    On April 4, 2018, the ATF Licensing System Registration Report, which is used by the

9   ATF to maintain information submitted by FFLs, listed both DEASER and █████home address as

10   3625 Arden Villa Place, Roseville, CA 95747.

11       26.    During January 11, 2018 interview,███████, a ███████of Capital

12   Gun Club, indicated that █had been to DEASER's residence, which ███ described as a new

13   house on Arden Villa Place. █ could not recall the street number.

14       27.    In addition, on January 10, 2018, at approximately 9:00 a.m., CA DOJ BOF SA Matthew

15   McCabe conducted surveillance at 3625 Arden Villa Place, Roseville, CA 95747.  SA McCabe observed

16   the Black 2015 Jeep SUV, bearing CA License Plate Number ████ in the drive way of the

17   residence located at 3625 Arden Villa Place, Roseville, CA 95747.  According to DMV records, this

18   vehicle was registered to ████ at 3625 Arden Villa Place, Roseville, CA.  During a December

19   20, 2017 interview ██████, a former employee of Capital Gun Club, stated that he

20   knew DEASER to drive the Jeep with license plate number ████

21       28.    On the same day, January 10, 2018, at approximately 5:59 p.m. (1759 hours), CA DOJ

22   BOF personnel:  SAS Lee Careaga, SA Brad Ehrman, SA Tim Huff, SA Rosa Rueda and SA Ben

23   Greenhagen, conducted surveillance at 2001 Opportunity Drive, Roseville, CA 95678.  SA Ehrman

24   observed DEASER approach the driver side of the Black 2015 Jeep SUV, bearing CA License Plate

25   Number ████  SAS Careaga, SA Ehrman, SA Huff, SA Rueda and SA Greenhagen followed

26   DEASER in the Black 2015 Jeep SUV, bearing CA License Plate Number ████ to 3625 Arden

27   Villa Place, Roseville, CA 95747.  DEASER exited the Black 2015 Jeep SUV, bearing CA License Plate

28   Number ████ and entered into the residence, located at 3625 Arden Villa Place, Roseville, CA

1 | 95747, through a side door.

2 | ## IV.    CONCLUSION

3 | 29.    Accordingly, for the foregoing reasons, I believe that there is probable cause that

4 | evidence and fruit of, and property used to commit the following crimes:  18 U.S.C. §§ 922(b)(5)

5 | (Failure by Federally Licensed Dealer to Keep Proper Records), 922(m) (making a false entry or failing

6 | to make entry in records by Federal Firearms Dealer), 924(a)(3) (knowing making of false statements by

7 | licensee), 1028(a)(7) (identity theft), 1028A (aggravated identity theft), 1029(a)(5) (access device

8 | fraud), 1341 (mail fraud) and 1343 (wire fraud), as described in Attachment B, will be found at the

9 | TARGET LOCATION, as further described in Attachment A.

10 | **THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK**

## V.   **REQUEST FOR SEALING**

30.   It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

4/4/18

Daniel Bietz
Special Agent
Special Agent, U.S. Department of Alcohol,
Tobacco, Firearms, and Explosives

Subscribed and sworn to before me on: _4/4/18_

The Honorable Allison Claire
UNITED STATES MAGISTRATE JUDGE

Approved as to form by
AUSA SHELLEY D. WEGER

AFFIDAVIT

8

1
2

### ATTACHMENT A

3   The premises to be searched is located at 3625 Arden Villa Place, Roseville, CA 95747 in Placer
4   County. It is a two story house, located on the south side of Arden Villa Place entering the Cul-de-Sac.
    The façade of the residence is tan in color with beige trim and a brown color roof. The house contains
5   two stone pillars in front of the house supporting the roof. The address numbers "3625" are clearly
    visible in white embossed numerals located to the right of the garage with "Arden Villa Place" directly
6   below it. The front door faces north towards Arden Villa Place. The front door of the house is a brown
    wood color. The garage is described as a tan metal roll-up garage door.
7
8   Also to be searched are ANY and ALL rooms, attics, basements, cellars, lofts, storage areas,
    safes, lockers, vaults, lock-boxes, garages, storage rooms, outbuildings, and all other areas within the
9   curtilage.

10   A photograph of the premises to be searched appears below:

11
12
13
14
15   
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTACHMENT B**

1.     All evidence, in whatever form, that relates to or constitutes a violation of 18 U.S.C. §§ 922(b)(5) (Failure by Federally Licensed Dealer to Keep Proper Records), 922(m) (making a false entry or failing to make entry in records by Federal Firearms Dealer), 924(a)(3) (knowing making of false statements by licensee), 1028(a)(7) (identity theft), 1028A (aggravated identity theft), 1029(a)(5) (access device fraud), 1341 (mail fraud) and 1343 (wire fraud), including:

   a.   All documents, records, notes, data and information relating to the transfer, purchase,

        distribution, or sale of firearms, including but not limited to:

        i.    ATF Forms 4473;

        ii.   California Dealer's Record of Sale (DROS) forms;

        iii.  Acquisition and Disposition (A&D book) book or its equivalent;

        iv.   Data from the Silver computer program;

        v.    Communications, including e-mail, and notes;

        vi.   Records, notes, and payments relating to the shipment of firearms;

        vii.  Shipping records, labels, or packing.

   b.   All records and information relating to payments made or received in connection with the

        purchase or sale of firearms including but not limited to details of credit or debit card

        transactions and wire transfers; checks; receipts (including emailed receipts); invoices;

        spreadsheets; QuickBooks, and other bookkeeping or accounting software; data from the

        Silver computer program; and stored credit or debit card numbers;

   c.   All identification cards and documents, including law enforcement identification and

        government issued identification such as Driver's Licenses, all copies of identification

        cards and documents, and all information relating to such identification cards.

   d.   Letters from law enforcement agencies on agency letterhead concerning the transfer,

        purchase or sale of firearms, and any other similar records or documents including copies

        of such documents;

AFFIDAVIT

1

e.  Any letters, sworn statements, or return receipts for registered or certified mail maintained pursuant to 18 U.S.C. § 922(c).

f.  E-mails, communications, notes, and other any other papers, relating to the transfer, sale or purchase of firearms, or payments made or received for firearms;

g.  Non-Roster firearms registered to Joseph DEASER, including but not limited to:

| | Make of Firearm | Model of Firearm | Caliber | Serial Number |
|---|---|---|---|---|
| 1 | SAUER, J. P., & SONS | P320 | 9 | 58B237220 |
| 2 | HECKLER & KOCH | VP9 SK | 9 | 232008743 |
| 3 | SAUER, J. P., & SONS | P320 | 9 | 58B182614 |
| 4 | KIMBER | Micro | 9 | PB0029807 |
| 5 | SMITH AND WESSON | Shield | 45 | HDV3156 |
| 6 | WESSON FIREARMS CO | Razorback | 10 | 1504129 |
| 7 | GLOCK,INC | 43 | 9 | ZXW912 |
| 8 | HECKLER & KOCH | P30L | 9 | 213018537 |
| 9 | GLOCK,INC | 42 | 380 | ABHT630 |
| 10 | WESSON FIREARMS CO | Silverback | 10 | 1504734 |

h.  Records and information relating to any e-mail account, including but not limited to info@capitalgunclub.com, used in connection with firearm transactions.

i.  Indicia of occupancy or use, to include telephone, utility, or other bills; address books; rental receipts or lease agreements; mortgage documents; mail; photographs; personal notes; and business documents including documents relating to Capital Gun Club, LLC;

Capital Gun Club Family Shooting Centers, LLC; Anarchy International; Anarchy Armory; and Capital Wildlife & Nature Education Foundation

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

A Non-Roster firearm is any handgun that does not appear on the State of California's list of approved handguns, which may be found at https://www.oag.ca.gov/firearms/certguns.

2.      Computers or storage media used as a means to commit the violations described above, including but not limited to those used to: (1) purchase, order, or sell firearms; (2) submit information to the electronic DROS system (DES); (3) conduct credit card transactions or wire transfers relating to the purchase or sale of firearms; (4) email firearm transactions receipts; and (5) track the purchase, payment, shipment, sale, receipt and transfer of firearms.

3.      For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a.   evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

l.   records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.  contextual information necessary to understand the evidence described in this attachment.

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

5

# EXHIBIT A

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of California

**ORIGINAL FILED**

APR 0 2 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____
DEPUTY CLERK

In the Matter of the Search of )
)
Premises located at:  2001 Opportunity Drive, )
Roseville, CA )
)
)

Case No.  **2:18-SW-0315 EFB**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference** .

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑  evidence of a crime;

☑  contraband, fruits of crime, or other items illegally possessed;

☑  property designed for use, intended for use, or used in committing a crime;

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC §§ 922(b)(5), 922(m), 924(a)(3), 1028(a)(7), 1028A, 1029(a)(5), 1341, 1343 | Failure by federally licensed dealer to keep proper records, making a false entry or failing to make entry in records by federal firearms dealer, knowing making of false statements by licensee, ID theft, Aggravated ID theft, access device fraud, mail fraud, wire fraud |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☐  Continued on the attached sheet.

☐  Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Daniel Bietz, Special Agent, ATF
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _4-2-2018_

_____
*Judge's signature*

City and state:  Sacramento, California

Edmund F. Brennan, U.S. Magistrate Judge

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____
Signature of Judge                                              Date

## ATTACHMENT A

### *Description of the Location to be Searched*

The premises to be searched is located at 2001 Opportunity Drive, Roseville, California 95678, which is the location of a business commonly known as Capital Gun Club. The premises to be searched is a two (2) story commercial building, located on the south-east corner of Opportunity Drive and Vineyard Road in Roseville, CA. The façade of the location is tan in color with blue trim and a red color roof. The building contains six (6) white columns in front of the building supporting two (2) awnings. The name "Capital Gun Club" is clearly visible in blue embossed letters, located below the second level roof awning, above the entrance to the business. The address numbers "2001" are clearly visible black numerals located on the tan façade of the building, to the right of the front door. The front door faces west towards Opportunity Drive. The front door of the business is brown wood color with a dark colored handle door knob. The front of the property is surrounded by an open commercial parking lot.

The search of the aforementioned premises shall include: ANY AND ALL safes, lockers, computers, and storage media, except those lockers and safes belonging exclusively to private members of Capital Gun Club other than Joseph DEASER and ▮▮▮▮▮▮▮▮▮

Below is a photograph of the premises to be searched:



Below are a photographs of the approximately eight (8) lockers (left photograph) and 3 safes (right photograph) used by private members of Capital Gun Club that are explicitly **EXCLUDED from this search.**




## ATTACHMENT B

1.  All evidence, in whatever form, that relates to or constitutes a violation of 18 U.S.C. §§ 922(b)(5) (Failure by Federally Licensed Dealer to Keep Proper Records), 922(m) (making a false entry or failing to make entry in records by Federal Firearms Dealer), 924(a)(3) (knowing making of false statements by licensee), 1028(a)(7) (identity theft), 1028A (aggravated identity theft), 1029(a)(5) (access device fraud), 1341 (mail fraud) and 1343 (wire fraud), including:

   a.  All documents, records, notes, data and information relating to the transfer, purchase, distribution, or sale of firearms, including but not limited to:

      i.   ATF Forms 4473;

      ii.  California Dealer's Record of Sale (DROS) forms;

      iii. Acquisition and Disposition (A&D book) book or its equivalent;

      iv.  Data from the Silver computer program;

      v.   Communications, including e-mail, and notes;

      vi.  Records, notes, and payments relating to the shipment of firearms;

      vii. Shipping records, labels, or packing.

   b.  All records and information relating to payments made or received in connection with the purchase or sale of firearms including but not limited to details of credit or debit card transactions and wire transfers; checks; receipts (including emailed receipts); invoices; spreadsheets; QuickBooks, and other bookkeeping or accounting software; data from the Silver computer program; and stored credit or debit card numbers;

   c.  All identification cards and documents, including law enforcement identification and government issued identification such as Driver's Licenses, all copies of identification cards and documents, and all information relating to such identification cards.

d.  Letters from law enforcement agencies on agency letterhead concerning the transfer, purchase or sale of firearms, and any other similar records or documents including copies of such documents;

e.  Any letters, sworn statements, or return receipts for registered or certified mail maintained pursuant to 18 U.S.C. § 922(c).

f.  Surveillance video footage;

g.  E-mails, communications, notes, and other any other papers, relating to the transfer, sale or purchase of firearms, or payments made or received for firearms;

h.  Non-Roster firearms registered to Joseph DEASER, including but not limited to:

|    | Make of Firearm | Model of Firearm | Caliber | Serial Number |
|----|-----------------|------------------|---------|---------------|
| 1  | SMITH AND WESSON | MP9 Compact 20 | 9 | NBC9580 |
| 2  | SAUER, J. P., & SONS | P320 | 9 | 58B237220 |
| 3  | HECKLER & KOCH | VP9 SK | 9 | 232008743 |
| 4  | SAUER, J. P., & SONS | P320 | 9 | 58B182614 |
| 5  | KIMBER | Micro | 9 | PB0029807 |
| 6  | SMITH AND WESSON | Shield | 45 | HDV3156 |
| 7  | WESSON FIREARMS CO | Razorback | 10 | 1504129 |
| 8  | GLOCK,INC | 43 | 9 | ZXW912 |
| 9  | HECKLER & KOCH | P30L | 9 | 213018537 |
| 10 | GLOCK,INC | 43 | 9 | ZVS269 |
| 11 | GLOCK,INC | 42 | 380 | ABHT630 |
| 12 | WESSON FIREARMS CO | Silverback | 10 | 1504734 |

i.   Records and information relating to any e-mail account, including but not limited

to info@capitalgunclub.com, used in connection with firearm transactions.

As used above, the terms "records" and "information" includes all forms of creation or

storage, including any form of computer or electronic storage (such as hard disks or other media

that can store data); any handmade form (such as writing); any mechanical form (such as printing

or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives,

videotapes, motion pictures, or photocopies).

A Non-Roster firearm is any handgun that does not appear on the State of California's list

of approved handguns, which may be found at https://www.oag.ca.gov/firearms/certguns.

2.   Computers or storage media used as a means to commit the violations described

above, including but not limited to those used to: (1) submit information to the electronic DROS

system (DES);(2) conduct credit card transactions or wire transfers relating to the purchase or

sale of firearms; (3) email firearm transactions receipts; and (4) track the purchase, payment,

shipment, sale, receipt and transfer of firearms.

3.   For any computer or storage medium whose seizure is otherwise authorized by

this warrant, and any computer or storage medium that contains or in which is stored records or

information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a.   evidence of who used, owned, or controlled the COMPUTER at the time the

things described in this warrant were created, edited, or deleted, such as logs,

registry entries, configuration files, saved usernames and passwords, documents,

browsing history, user profiles, email, email contacts, "chat," instant messaging

logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.  contextual information necessary to understand the evidence described in this attachment.

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

~~ORIGINAL~~
**FILED**

for the

Eastern District of California

APR C 2 2018

CLERK, U.S DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY CLERK

In the Matter of the Search of

Premises located at: 2001 Opportunity Drive,
Roseville, CA

)
)
)
)
)
)

Case No.

**2: 1 8 - SW - 0 3 1 5    EFB**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference** .

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC §§ 922(b)(5), 922(m), 924(a)(3), 1028(a)(7), 1028A, 1029(a)(5), 1341, 1343 | Failure by federally licensed dealer to keep proper records, making a false entry or failing to make entry in records by federal firearms dealer, knowing making of false statements by licensee, ID theft, Aggravated ID theft, access device fraud, mail fraud, wire fraud |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☐ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Daniel Bietz, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4-2-2018

_____
*Judge's signature*

City and state:  Sacramento, California

Edmund F. Brennan, U.S. Magistrate Judge

McGREGOR W. SCOTT
United States Attorney
MICHAEL D. ANDERSON
SHELLEY D. WEGER
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of: | CASE NO. |
| 2001 Opportunity Drive, Roseville, CA | AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE |

I, Daniel Bietz, being first duly sworn, hereby depose and state as follows:

## I.   INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), assigned to the Sacramento Field Office. I have been employed with the ATF since May 2016. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. While there, I received 7 months of training in the investigative techniques and enforcement of federal firearms and explosives law. Additionally, I previously served as a Combat Engineer in the United States Army and California National Guard earning the rank of Sergeant. As a Combat Engineer, I gained significant experience in the identification, maintenance and use of both firearms and explosives. My current duties and responsibilities with the ATF include investigating violations of federal criminal laws contained in Title 18 of the United States Code relating to firearms.

2.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of

AFFIDAVIT

1

1   Criminal Procedure for a warrant to search the premises located at 2001 Opportunity Drive, Roseville,

2   CA 95678, which is commonly known as the Capital Gun Club (TARGET LOCATION), as described

3   in **Attachment A,** for the items described in Attachment B, including all computers and storage media.

4   Both Attachment A and Attachment B are fully incorporated by reference.  As described in Attachment

5   A, lockers and safes used solely by private members of Capital Gun Club are exempt from the requested

6   warrant.

7       3.   The statements in this Affidavit are based in part on my personal observations, my

8   training and experience, records, and information obtained from other law enforcement officers and

9   witnesses.  This affidavit is intended to show only that there is sufficient probable cause for the

10   requested warrant and does not set forth all of my knowledge about this matter.

11   II.   **APPLICABLE LAW**

12       4.   **Title 18, United States Code § 922(b)(5)** makes it unlawful, in relevant part, for any

13   licensed dealer to sell or deliver any firearm to any person unless the licensee notes in its records,

14   required to be kept pursuant to section 923 of Title 18, the name, age, and place of residence of such

15   person.

16       5.   **Title 18, United States Code § 922(m)** makes it unlawful for any "licensed dealer . . .

17   knowingly to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain

18   any record which is required to be kept pursuant to section 923 of title 18 or regulations promulgated

19   thereunder.

20       6.   **Title 18, United States Code § 924(a)(3)** provides in relevant part that any licensed

21   dealer who knowingly makes any false statement or representation with respect to the information

22   required by the provisions of this chapter [Chapter 44] to be kept in the record of a person licensed

23   under this chapter, or violates subsection (m) of section 922, shall be fined under this title, imprisoned

24   not more than one year, or both.

25       7.   **Title 18, United States Code § 1028(a)(7)** makes it a felony to knowingly transfer,

26   possess, or use without lawful authority, a means of identification of another person with the intent to

27   commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of

28   Federal law or a felony under applicable State law.

8.      **Title 18, United States Code § 1028A** provides, in relevant part, that "whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." The felonies enumerated in subsection (c) include, violations of Title 18: section 922(a)(6) relating to false statements in connection with the acquisition of a firearm, sections 1028 and 1029, except section 1028(a)(7), relating to identity and access device fraud, and sections 1341 (mail fraud) and 1343 (wire fraud).

9.      **Title 18, United States Code § 1029(a)(5)** in relevant part makes it a felony to "knowingly and with intent to defraud effect[] transactions with 1 or more access devices issued to another person or persons, to receive payment or any other thing of value during any 1-year period the aggregate value of which is equal to or greater than $1,000.

10.     **Title 18, United States Code § 1341** makes it a felony to devise or intend to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, and for the purpose of executing the scheme deposits or causes to be deposited any matter or thing to be sent or delivered by the United States Postal Service or any private or commercial interstate carrier or knowingly causes to be delivered by mail or any such carrier according to the direction thereon.

11.     **Title 18, United States Code § 1343** in relevant part makes it a felony to devise or intend to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, and for the purpose of executing the scheme or artifice transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds.

**III.    DEFINITION OF TERMS AND OVERVIEW OF THE SALE OF FIREARMS IN THE STATE OF CALIFORNIA**

12.     Federal law defines a **"firearm"** as "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3)(A). This definition includes "the frame or receiver of any such weapon," 18 U.S.C. § 921(a)(3)(B), and "any combination of parts either designed or intended" from which a firearm can be "readily assembled." 18

1 | U.S.C. § 921(a)(4)(C).  A "receiver" under 18 U.S.C. § 921(a)(3)(B) includes a "lower receiver."

2 |      13.     This investigation involves "**handguns**," which is defined to include "a firearm which

3 | has a short stock and is designed to be held and fired by the use of a single hand." 18 U.S.C. § 921(29).

4 |      14.     Federal law requires a person[1] to become a **federal firearms licensee (FFL)** in order to

5 | lawfully engage in the business of selling firearms with the principle purpose of livelihood and profit.

6 | 18 U.S.C. §§ 921(a)(11), (21)(C); 922(a)(1)(A).

7 |      15.     To become an FFL, a person must submit an application.  The application requires a

8 | variety of information including, in relevant part, the name of the owner or corporation holding the FFL;

9 | the FFL's business name, address and telephone number; and information about each person who has

10 | the power to direct the management, policies and practices of the business or activity as it pertains to

11 | firearms (referred to as the "Responsible Person"), including each Responsible Person's name, social

12 | security number, phone number, and fingerprints.  In a corporation, this includes corporate officers or

13 | any other employee with the legal authority described above.

14 |      16.     To conduct firearm transactions in the state of California individuals must also receive a

15 | state license, which first requires a valid federal firearms license.  Pursuant to California State law,

16 | FFLs[2] can only sell members of the general public handguns that appear on the State of California's list

17 | of approved handguns, which is publicly available at https://www.oag.ca.gov/firearms/certguns.  FFLs

18 | may, however, legally sell "Non-Roster" handguns—guns that do not appear on the State of California's

19 | list of approved handguns—to sworn peace officers of a police department, the California Department of

20 | Corrections and Rehabilitation, or other agencies specifically identified in California Penal Code

21 | § 3200(b)(4).

22 |      17.     In California, members of the general public may only purchase Non-Roster handguns

23 | second-hand from a private individual (such as a peace officer) who already legally possesses the Non-

24 | Roster gun inside the State of California.  Individuals of the general public cannot buy new Non-Roster

25 |

26 |    [1] "Person" is defined to include any individual, corporation, company, association, firm or

27 | partnership. 18 U.S.C. § 921(a)(1).

28 |    [2] For the purposes of this affidavit, when "FFL" is used it refers to a licensee who holds both a
federal and California state license to sell or transfer firearms.

1  handguns or purchase them from out-of-state, thus reducing the availability of Non-Roster handguns.

2      18.    Private individuals, including sworn peace officers, who legally possess Non-Roster

3  handguns in California are able to sell them to other private individuals through what is called a private

4  party transfer. In California, a private party transfer must be conducted through an FFL.

5      19.    Federal law requires FFLs to keep a record of the receipt and disposition of each firearm

6  it receives and/or transfers. Such records are typically maintained in an Acquisition and Disposition

7  book also known as an A&D book.

8      20.    FFLs are also required to keep an **ATF Firearms Transaction Record, Form 4473**

9  **(Form 4473)**, for every sale from the FFL to a non-FFL, and every private party transfer, and to have

10  the forms readily available for inspection

11      21.    The Form 4473 has four sections, two that must be completed by the Transferee/Buyer

12  and two that must be completed by the FFL (Transferor/Seller). Both the transferee and FFL/transferor

13  are required to sign the Form 4473 making certain certifications, including that the information they

14  provided is true and correct.

15      a)    Section A is required to be "completed personally by [the] Transferee/Buyer." It requires

16      identifying information about the buyer (such as the buyer's name, address, date of birth, and a

17      government-issue photo identification such as a driver's license number). It also contains

18      questions to determine whether the buyer is legally prohibited from possessing a firearm.

19      Question 11(a) asks, "Are you the actual transferee/buyer of the firearm(s) listed on this form?

20      **Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on**

21      **behalf of another person. If you are not the actual transferee/buyer, the licensee cannot**

22      **transfer the firearm(s) to you.**"

23      b)    Section B must be completed by the FFL.

24      c)    Section C is to be "completed personally" and signed by the transferee/buyer at time the

25      buyer receives the firearm to certify that the information provided in Section A is still true,

26      correct, and complete.

27      d)    Section D contains a chart where the firearms to be transferred are listed by Manufacturer

28      and Importer (if any), Model, Serial Number, Type, and Caliber or Gauge. The FFL is then

1        required to list its name and license number, sign a certification, and provide the date the firearm

2        is transferred.

3        22.     In addition to the Form 4473, California law requires FFLs to complete a **Dealer Record**

4    **of Sale ("DROS form")** prior to selling or transferring a firearm. The DROS form requires information

5    about the date and time of the transaction; the firearm; as well as the purchaser and seller/dealer. An

6    employee of the FFL is required to enter the DROS information into the DROS Entry System ("DES"),

7    which is a web-based system accessed via the Internet, using a uniquely assigned username and

8    password. A username and password is assigned only to those employees that the FFL authorizes to

9    access DES. The FFL employee is required by law to swipe the purchaser's Driver's License or

10   government issued ID on a magnetic card reader to automatically upload the purchaser's name, date of

11   birth, and Driver's License or identification number from the ID into DES.[3] The FFL employee is then

12   required to fill in the remaining fields, which include information about the firearm. After the

13   information is entered, DES transmits the information to the California Department of Justice for a

14   background check on the purchaser and the firearm to ensure that it is not stolen. When the DROS is

15   accepted by CA DOJ, a unique DROS number is assigned and the 10-day waiting period begins.

16   California law requires the dealer to hold the firearm for 10 days while CA DOJ conducts the

17   background check.[4]

18       23.     The FFL is required to print the DROS form, which is initially marked "Pending." In

19   every transaction, the buyer is required to sign the "Pending" DROS form declaring under the penalty of

20   perjury under California law that the information provided is true and correct. The salesperson is

21   required to sign as a witness to the purchaser's signature and identification. If the transaction is a

22   Private Party Transfer, the seller must also sign the DROS form under the penalty of perjury. The

23   "Pending" DROS form is required to be maintained by the FFL.

24       24.     Once the DROS has been approved, DES will designate the status as "Approved," and

25

26       [3] There are a few exceptions to this requirement, such as when the magnetic strip on the card is
     damaged or the FFL's equipment is having technical difficulties. In such circumstances, the FFL may
27   type in the information and retain a copy of the ID. *See* CA PC § 28180.

28       [4] The 10-day waiting period also applies to buyers who are sworn Peace Officers unless they
     present a letter on their agency letterhead that meets certain requirements prescribed by law.

AFFIDAVIT                                    6

1  when the gun can be transferred, it will display a "Deliver Gun" button. The FFL is required to click
2  this button at the time the firearm is delivered to the buyer. The FFL is required to print the "Approved"
3  DROS form and have each of the parties to the transaction sign the form at the time the firearm is
4  delivered to the buyer. The "Approved" DROS form prints with the delivery date and time. The FFL is
5  required to maintain the "Approved" DROS form along with the other documentation for the
6  transaction.

7      25.     The FFL is also required to obtain the buyer's right thumbprint on the DROS printout.
8  Prior to February 21, 2017, the thumbprint needed to be on at least one version of the DROS form. On
9  February 21, 2017, CA DOJ issued a bulletin via DES titled "DROS Documentation Requirements &
10 Corrections," requiring a thumbprint on the "Approved" DROS form. In relevant part, the bulletin
11 stated:

12          Signature requirements: CFDs [California firearms dealers] (or its sales
            personnel) shall sign and obtain the purchaser(s) signature on both the
13          "Pending" DROS document and the approved "Delivered" DROS
            document; pursuant to Penal Code (PC) 28160(a)(30-31), 28160(c), and
14          28160(d).

15          Thumbprint requirements: Pursuant to PC 28160(b), CFDs shall obtain the
16          purchaser's right thumbprint on the approved "Delivered" DROS
            document. If preferred, CFDs may obtain the right thumbprint on both the
17          "Pending" DROS and the approved "Delivered" DROS documents.

18

19     26.     DES required FFLs to acknowledge that they had reviewed the document prior to
20 performing any additional transactions. DES indicates that DEASER reviewed this bulletin on February
21 22, 2017.

22     27.     A buyer must be physically present at an FFL to purchase a firearm. Both the Form 4473
23 and DROS form are to be completed at the FFL. When purchasing a firearm from an FFL, the buyer
24 must present a valid government-issued identification and obtain or show proof of a handgun safety
25 certificate. In order for a Peace Officer to purchase a Non-Roster handgun, the Peace Officer must
26 present valid law enforcement credentials. Although there is an exception under federal law that permits
27 an FFL to sell a firearm to an individual who does not appear in person at the FFL's business premises,
28 there is no such exception under California's state law. Further, in order to fall under the federal

1   exception, the buyer must provide the FFL with a sworn statement making certain statutorily required

2   representations.  Prior to the delivery of the firearm, the FFL is required to send the buyer's sworn

3   statement and information about the firearm to the chief law enforcement officer of the buyer's place of

4   residence by registered or certified mail.  The FFL is statutorily required to keep the sworn statement

5   and a copy of the notification to the local law enforcement officer, with evidence of receipt or rejection

6   of that notification.

7       28.     Private Party Transfers require a similar process.  The process is initiated once the parties

8   complete the requisite paperwork to begin the 10-day waiting period.

9                          **IV.    PROBABLE CAUSE**

10      **A.     Background Information**

11      29.     This case is an investigation into allegations that Joseph John DEASER IV (DOB:

12  XX/XX/1970), through his business(es) and FFL(s), is purchasing Non-Roster handguns in the name of

13  law enforcement officers without the officers' knowledge or consent and then, within a short period of

14  time, selling or transferring the Non-Roster guns to non-law enforcement individuals (including himself

15  and his ███████████████ ), individuals who could not otherwise purchase new Non-Roster

16  handguns under California law.

17      30.     DEASER operates his business(es) and FFL(s) at 2001 Opportunity Drive, Roseville,

18  California.  The business is commonly known as the Capital Gun Club.  On its website,

19  capitalgunclub.com, the Capital Gun Club describes itself as a "Members Only" gun club that offers, in

20  relevant part, an indoor shooting range and gun shop open only to club members.  There are different

21  levels of membership.  Each level of membership has a monthly fee and offers certain benefits.

22      31.     According to ATF records, the following three FFLs identify 2001 Opportunity Drive,

23  Roseville, CA as their business address:

24          a)      **Capital Gun Club Family Shooting Centers LLC** (FFL number ending in

25  4769) has held an FFL from February 27, 2017 to the present.  The FFL application indicates that it does

26  business as Capital Gun Club, and lists Joseph DEASER and ███████ as the Responsible Persons.

27          b)      **Anarchy International** (FFL number ending in 3632) has held an FFL from July

ARMORY

28  25, 2013 to the present.  The FFL application indicates it does business as Anarchy ~~Armory~~, and lists

1   Joseph DEASER and ▮▮▮▮▮▮▮ as the Responsible Persons.

2         c)    **Anarchy International LLC** (FFL number ending in 3309) held an FFL from

3   January 10, 2013, to approximately April 28, 2017. The FFL application indicates that it did business as

4   Capital Gun Club, and that its Responsible Persons were Joseph DEASER and ▮▮▮▮▮▮▮.

5         32.   According to the California Secretary of State's website, DEASER is, or has been, the

6   managing member, organizer, and/or agent for service or process for several LLCs operating at this

7   address including: Capital Gun Club, LLC (active from approximately March 2012 to March 2016);

8   Capital Gun Club Docs, LLC (active November 28, 2017 to present); Capital Gun Club Family Shooting

9   Centers, LLC (active December 2014 to present); Anarchy Armory, LLC (FTB Suspended); Anarchy

10  International, LLC (FTB Suspended); and a non-profit corporation, Capital Wildlife & Nature Education

11  Foundation (active from July 2013 to present).

12      **B.    Origin of the Investigation**

13        33.   In December 2017, the ATF and the California Department of Justice Bureau of Firearms

14  (CA DOJ BOF) received information from ▮▮▮▮▮ ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ of Capital Gun

15  Club) and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of Capital Gun Club), that DEASER was

16  involved in the unlawful sale of Non-Roster firearms and had made unauthorized purchases on ▮

17  ▮▮▮▮▮▮▮▮ credit card.

18        34.   On December 20, 2017, at approximately 5:00 p.m., ATF Regional Agent in Charge,

19  Graham Barlowe; ATF Special Agent David Morris; ATF Area Supervisor, Natalie Weitzman; CA DOJ

20  Special Agent Supervisor, Blake Graham; CA DOJ Bureau of Firearms ("BOF") Special Agents

21  Salvador Gonzalez; and CA DOJ Field Representatives Robin Brown and Sherry Carter met with

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at the ATF office in Sacramento.

23        35.   ▮▮▮▮▮▮▮▮▮ stated ▮ frequently drove past Capital Gun Club on ▮ way to

24  and from work. In mid-January 2015, ▮▮▮▮▮▮▮▮ inquired about memberships, and

25  decided to join Capital Gun Club as a "Platinum Member." ▮▮▮▮▮▮▮▮ stated that after

26  ▮ initial purchase of firearms ▮ was not required to be present, show identification, or sign forms for

27  subsequent purchases. ▮ did not recall whether ▮ ever provided a thumbprint, but said may have

28  provided a thumbprint once. ▮ firearm purchases and monthly membership fees were charged to ▮▮

AFFIDAVIT                              9

1  credit card kept on file at Capital Gun Club.

2      36.    A few months after ▓▓▓▓▓▓▓▓▓ joined Capital Gun Club ▓▓ accompanied

3  DEASER on a trip to the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in Las Vegas, Nevada.

4  During the trip, DEASER suggested that ▓▓▓▓▓▓▓▓ invest in DEASER's business by buying

5  $18,000 worth of firearms, which they could later sell for profit.  Upon ▓▓ return home, ▓

6  ▓▓▓▓▓▓ wrote DEASER a check for $18,000.  ▓▓▓▓▓▓▓ stated that, to date, ▓ has

7  not received any repayment or profit, and that DEASER has refused to pay ▓ back.

8      37.    In approximately November 2017, ▓▓▓▓▓▓▓ was told by the Chief Financial

9  Officer of ▓▓▓▓▓ that ▓▓▓▓▓▓▓ credit card account had between $17,000 and $20,000

10  in charges related to firearm transactions between January 2015 and November 2017. ▓

11  ▓▓▓▓▓ contacted ▓▓▓▓▓▓▓▓▓▓▓▓ at Capital Gun Club, and ▓

12  ▓▓▓▓▓ told ▓▓▓▓▓ that ▓▓▓▓▓▓ credit card was used to purchase

13  Non-Roster handguns for law enforcement officers through an iPad that was referred to a ▓▓▓

14  iPad."  ▓▓▓▓▓▓ stated that DEASER used ▓ credit card without ▓ knowledge or consent.

15      38.    ▓▓▓▓▓▓▓ had taken pictures of firearm transactions using ▓

16  ▓▓▓▓▓ credit card that ▓ pulled up on the device referred to as ▓▓▓ (referring to ▓

17  ▓▓▓ ) iPad and e-mailed the photographs to ▓▓▓▓▓▓▓▓▓ .  ▓▓▓▓▓▓▓

18  subsequently emailed the photographs to law enforcement.  Each of the photographs was similar to the

19  one appearing below and showed transactional information in what appeared to be a software or online

20  system named "Silver."  The system indicated a ticket number; transaction date and amount; the Station;

21  and the credit card used for the purchase.

22      **THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK**

23

24

25

26

27

28



39. ████████████ also provided documentation showing that ██ disputed some of the charges with ██ credit card company. The documentation included DEASER's responses to several inquiries from the credit card company, wherein DEASER stated the purchases were made by ██ ████████ or ████. It appears that as of the date of this documentation, the charges were not reversed.

40. ████████████ stated ██ helped ██ obtain ████████ at Capital Gun Club where ████ from February 1, 2016 until November 28, 2017. ████████ stated ██ was ██ after he told ████████ that ████ credit card was used to purchase Non-Roster handguns for law enforcement officers.[5] ████████████

41. ████████████ stated that DEASER was selling firearms to Capital Gun Club members but was not conducting the sales in accordance with California law. ████████ stated that ██ observed DEASER (1) falsify information on the DROS forms, (2) sign DROS forms for members purchasing firearms, and (3) provide his (DEASER's) thumbprint or fingerprint on the DROS form as the buyer's thumbprint. ████████ stated that 90 percent or more of the thumbprints

---

[5] ████████ also stated that ██ access to Capital Gun Club was revoked and ██ was not permitted to retrieve ██ personal firearm ████████

1  on the DROS forms belonged to DEASER rather than the buyer. ██████████ said DEASER was

2  responsible for ordering the firearms purchased by members. ██████████ also stated that

3  DEASER told ████████████ on a couple of occasions to provide ██ (██████████)

4  thumbprint in place the member purchaser's thumbprint.

5       42.   ██████████ believed that a few law enforcement officers had agreed to allow

6  DEASER to purchase Non-Roster handguns in their names so that DEASER could sell the Non-Roster

7  handguns to non-law enforcement members of Capital Gun Club. ██████████ stated DEASER

8  provided the benefit of buying a Non-Roster handgun to the "elite members" of the club.

9       43.   Once ██████████ realized some of the firearm transactions were not handled in

10  accordance with California law, ██████████ attempted to file a police report with the Roseville

11  Police Department, who directed both ████████ and ██████████ to ATF and CA DOJ.

12       44.   As discussed in more detail below, during this investigation law enforcement

13  corroborated many of ██████████ statements about DEASER purchasing Non-Roster firearms

14  using the identities of law enforcement officers and then, shortly thereafter, selling the Non-Roster

15  handguns to non-law enforcement individuals.  The investigation also confirmed that in numerous

16  instances DEASER was using his (DEASER's) thumb or finger print(s) on the DROS form in place of

17  the purchaser's thumbprint.

18       C.   **Background Information regarding** ██████████:

19       45.   ██████████ is listed on the ██████████████████████ due to a

20  ██████████████████████████████████████████████

21  ██████████████████  This ██████████ had a condition of

22  ████████ that prohibited ██████████ from possessing firearms.  The CA DOJ Automated

23  Firearms System, which contains records of firearm ownership, indicated that ██████████ had

24  five firearms registered in ██ name. ██████████ stated that ██ gave these firearms to DEASER

25  for storage.

26       46.   On April 4, 2016, after ██████████████████ Capital Gun Club, the

27  ████████████████████████████████████████████

28  ██████████████:

1    May possess firearms during █████████ and while █████████████
2    █████████████  May only possess while at these locations.
3    █████████████ stated that the ██████ allowed ██ to seek █████████
4    **D.   Background Information regarding** █████████████
5    47.  During the course of this investigation, █████████████ wrote three e-mails and
6    contacted the investigative team several times by phone to express ██ displeasure with what ██
7    perceived to be a lack of action by law enforcement.  In these communications, █████████████
8    indicated that ██ was receiving threats via ██ work phone line and demanded action to ensure ██ safety
9    and to "go after crazy Joe" (DEASER). █████████████ also complained about ██ inability to
10   contact the investigative team and expressed concern because ██ had been contacted by the media
11   regarding Capital Gun Club. █████████████ stated that ██ had more information about Capital
12   Gun Club, but that ██ wanted an agreement that ██ would not get in trouble with law enforcement in
13   exchange for the information.  In one email █████████████ described the threats ██ had received
14   as "death threats" however when SA Gonzalez spoke with █████████████ about ██ litany of
15   concerns, █████████████ did not describe the calls ██ had received as threats.  SA Gonzalez
16   indicated that █████████████ needed to be patient and that the investigative team was working on a
17   search warrant.
18   **E.   Investigation**
19   48.  On January 9, 2018, CA DOJ BOF SA Gonzalez checked the DES system, which
20   contains records of all firearm transactions conducted by an FFL in the state of California, and identified
21   approximately one-hundred and seventy-five (175) DROS records showing the transfer or sale of Non-
22   Roster handguns by FFLs operating at 2001 Opportunity Drive, Roseville, CA, between approximately
23   2014 and 2017.  In addition to the 175 transactions, there are additional firearm transactions where the
24   information entered into DES is not detailed enough to determine whether the transaction involves a
25   Non-Roster firearm.
26   49.  Of the 175 transactions, 51 transactions appeared to involve a law enforcement officer
27   purchasing a Non-Roster handgun and then, within a short period of time, reselling it to a non-law
28   enforcement individual.  These 51 transactions involved five law enforcement officers employed by the



1   ███████████████████████████ (DOB: ███ ██ ███

2   ███ (DOB: █████████, ███ ████████ (DOB: ████████,

3   ███ (DOB: ████ and ███████ (DOB: ████, as well as, ███

4   ███ officer with the ████████████████████ (DOB: ████.

5        50.    On January 10 and 11, 2018, CA DOJ Field Representatives Robin Brown and Sherry

6   Carter from the DOJ BOF Training, Information and Compliance Section (TICS), conducted a state

7   regulatory firearm dealer inspection at Capital Gun Club, pursuant to California Penal Code (PC)

8   §§ 26720 and 26900, for the purpose of determining whether firearm transactions were being conducted

9   in compliance with California state laws and regulations. CA DOJ BOF TICS FR's check for the illegal

10  sale of firearms and other unlawful gun transactions and review the FFL's database and records of

11  firearm transactions. During their inspection, the Field Representatives collected copies of DROS forms

12  and Forms 4473, for transactions involving certain individuals who had been identified as purchasing

13  and reselling multiple Non-Roster firearms.[6]

14       51.    Each of the DROS forms identified in the charts below indicated that the DROS

15  information had been entered into DES by "Deaser, Joseph."

16       52.    The DROS forms and Form 4473's confirmed that Non-Roster handguns had been

17  purchased by a law enforcement officer and then, within a short period of time, transferred or sold to a

18  non-law enforcement individual.

19       53.    SA Gonzalez submitted copies of those DROS forms that had buyer's purported

20  fingerprints along with CA Department of Motor Vehicle Soundex (which contain fingerprints), for

21  DEASER, ████ and various Capital Gun Club customers, to the California Department of Justice

22  Bureau of Criminal Identification and Investigative Services Automated Latent Print Section for

23  fingerprint comparisons. A Latent Print Analyst determined that of the 42 DROS forms that contained

24  fingerprints sufficient for analysis, all but one were identified as being made by Joseph DEASER, DOB

25  XX/XX/1970. The DROS forms referenced below are all in "Pending" status unless otherwise

26

27       [6] In addition to the DROS forms identified in this affidavit, there are additional Pending and

28  Approved DROS forms that were collected. Of the additional forms, some do not have fingerprints, others have fingerprints that were not sufficient for analysis, and some have DEASER's finger print.

1   designated.

2   **Statement of** ███████████████████████████

3       54.   On January 11, 2018, at approximately 5:30 p.m., CA DOJ BOF SA Jesus Gutierrez and

4   SA Gonzalez met with ████████████ at a Starbucks in Roseville, CA.

5       55.   ███████ stated ██ and ████████ ███████, had been members of the club since

6   it opened in late May 2013. ████████ stated ██ and DEASER came to a business agreement whereby

7   █████████ agreed to become ██████████████████████████████ in exchange for free

8   membership and free use of DEASER's ████████. On August 3, 2014, ███████ started ████████

9   ████████ stated ████████████████████████ from August 3, 2014, to

10   September 23, 2017 (approximately 3 years and 1 month), ████████████████████████

11       56.   ███████ stated DEASER had a drawer located on the right side of the main counter,

12   with copies of member credit cards and two or three law enforcement officers' identification cards (ID)

13   in order to purchase Non-Roster handguns for the "Elite" members of Capital Gun Club. ████████

14   stated the "selling point" of Capital Gun Club was the convenience it offered by being able to order a

15   firearm over a phone, having all DROS and ATF forms filled out, and the seemingly easy access to Non-

16   Roster firearms.

17       57.   ████████ stated, between August 3, 2014 and September 23, 2017, ██ observed DEASER

18   falsify information on State of California DROS forms, sign DROS forms for other individuals, and

19   provide his own fingerprints—at times using multiple fingers, not just his thumbprint—on the DROS

20   forms, instead of the purchaser's thumbprint.[7]

21       58.   ████████ stated ████████████████ told ██ DEASER owed ████████ █

22   ████████ money. ████████ told ████████████ suspected DEASER was using █

23   ████████ credit card to purchase firearms and accessories. ████████ stated that around that

24   same time, ██ found out DEASER was using someone else ████████████ and that DEASER was

25   signing CCW class certifications before students completed the requisite classes. ████████ stated that

26

---

27      [7] By conducting transactions in this manner, DEASER is potentially violating California law:
   furnishing incorrect information on the DROS form violates CA Penal Code (PC) § 28250 and failing to
28   provide the purchaser's right thumbprint violates CA PC § 28160(b).

1    ████ decided ████ didn't want to be a part of what was going on. ████████ indicated ██████

2    ████████ was on September 23, 2017, and on October 13, 2017,████ stopped going to Capital Gun Club.

3    ██████ stated ██ has not had contact with Capital Gun Club or DEASER since that date.

4    **Statement of Peace Officer** ████████ ████

5        59.    ████ ████ ████ is a ████████████ and works at the ████████

6        On January 16, 2018, CA DOJ BOF SA Gonzalez, and I met with ████████ at the

7    ████████ located at ████████ Sacramento, CA ████

8        60.    ████████ stated ██ has held a "Silver" membership at Capital Gun Club since it

9    opened in late May 2013. ████████ was not required to pay a monthly fee for ██ membership.

10        61.    ████████ stated ██ had purchased one (1) handgun and five (5) long guns (shotguns

11    and rifles) from Capital Gun Club. ████████ stated ██ had never sold or transferred any firearms

12    through Capital Gun Club and still had all the firearms ██ purchased from Capital Gun Club.

13        62.    SA Gonzalez showed ████████ a copy of ████████ ID Card, which was obtained

14    during the state inspection of Capital Gun Club. ████████ confirmed the card was ██, and that ████

15    used the ID card to purchase firearms at Capital Gun Club.

16        63.    SA Gonzalez asked ████████ if ██ had purchased, sold, or was aware of the following

17    twenty-one (21) firearm transactions, reflected in the DES as being associated with ████████.[8]

| Firearm | Firearm Serial No. | Date of Purchase by ████ | Purchased From | Fingerprint on DROS form in box titled "Purchaser's Right Thumbprint" | Date of Transfer from ████ | Transferred from ████ to |
|---|---|---|---|---|---|---|
| Smith & Wesson, MP9, 9 mm Pistol | HUY6399 | 1/7/15 | Capital Gun Club Family Shooting Centers | Deaser's Right Thumb | 1/26/15 | ████ |

---

26        [8] For each of the charts in this affidavit, the information in each column, except for the

27    fingerprint column, was obtained from DES. Fingerprints are not submitted to CA DOJ. The information in the fingerprint column was obtained from the DROS forms collected during CA DOJ's

28    state inspection and/or the findings of the fingerprint comparisons detailed in the CA DOJ Latent Print Section's Case Examination Report signed and dated March 16, 2018.

AFFIDAVIT

| Firearm | Firearm Serial No. | Date of Purchase by ▓ | Purchased From | Fingerprint on DROS form in box titled "Purchaser's Right Thumbprint" | Date of Transfer from ▓ | Transferred from ▓ to |
|---|---|---|---|---|---|---|
| Kimber, Micro Raptor, 380 Caliber Pistol | P0008994 | 5/21/15 | Capital Gun Club Family Shooting Centers | Deaser's Right Middle Finger | 8/18/15 | ▓ ▓ |
| Wesson Firearms Co, Silverback, 10 mm Pistol | 1504734 | 6/29/15 | Capital Gun Club Family Shooting Centers | Deaser's Right Middle Finger | 8/16/15 | Joseph DEASER |
| Kimber, Micro Diamond, 380 Caliber Pistol | P0011568 | 6/29/15 | Capital Gun Club Family Shooting Centers | Deaser's Right Middle Finger | 8/18/15 | ▓ |
| Colt, Delta Elite, 10 mm Pistol | DS32651 | 6/29/15 | Capital Gun Club Family Shooting Centers | Deaser's Right Middle Finger | 8/18/15 | ▓ |
| Glock, 40, 10 mm Pistol | ZRH592 | 9/23/15 | Capital Gun Club Family Shooting Centers | Print on DROS Form insufficient for analysis | 12/19/15 | ▓ |
| Glock, 43, 9 mm Pistol | ZXW912 | 9/23/15 | Capital Gun Club Family Shooting Centers | Deaser's Right Middle Finger | 2/4/16 | Joseph DEASER |
| Wesson Firearms Co, Razorback, 10 mm Pistol | 1504129 | 9/23/15 | Capital Gun Club Family Shooting Centers | Deaser's Right Middle Finger | 2/4/16 | Joseph DEASER |
| Wesson Firearms Co, Titan, 10 mm Pistol | CN00148 | 9/23/15 | Capital Gun Club Family Shooting Centers | Print on DROS Form insufficient for analysis | 2/4/16 | Joseph DEASER[9] |

[9] This firearm was subsequently transferred from DEASER to ▓ ▓ on 2/10/2016. The DROS Form documenting the transfer to ▓ contains a fingerprint identified as ▓

| Firearm | Firearm Serial No. | Date of Purchase by █ | Purchased From | Fingerprint on DROS form in box titled "Purchaser's Right Thumbprint" | Date of Transfer from █ | Transferred from █ to █ |
|---|---|---|---|---|---|---|
| Heckler & Koch, P30L, 9 mm | 213018537 | 12/8/15 | Capital Gun Club Family Shooting Centers | Print on DROS Form insufficient for analysis | 2/4/16 | █ |
| Kimber, Micro Raptor, 380 Caliber Pistol | P0015683 | 12/8/15 | Capital Gun Club Family Shooting Centers | Print on DROS Form insufficient for analysis | 2/4/16 | Joseph DEASER[10] |
| Sphinx Engineering, SAP Compact, 9 mm Pistol | S12B002031 | 12/24/15 | Capital Gun Club Family Shooting Centers | Deaser's Right Middle Finger | 2/17/16 | █ |
| Coonan Arms, Classic, 357 Caliber Pistol | FLA5291 | 12/24/15 | Capital Gun Club Family Shooting Centers | Deaser's Right Middle Finger | 2/17/16 | █ |
| Kimber, Micro 9, 9 mm, Pistol | PB0008178 | 11/17/16 | Capital Gun Club Family Shooting Centers | Deaser's Right Middle Finger | 2/22/17 | █ |
| Kimber, Micro, 380 Caliber, Pistol | P0047579 | 11/17/16 | Capital Gun Club Family Shooting Centers | Print on DROS Form insufficient for analysis | 2/22/17 | █ |
| Smith & Wesson, Shield, 45 Caliber Pistol | HDV3240 | 2/14/17 | Capital Gun Club Family Shooting Centers | Print on DROS Form insufficient for analysis | 4/13/17 | █ |

right thumbprint. Of the DROS forms that were analyzed for fingerprints, this is the one DROS form that did not have DEASER's print.

[10] This firearm was subsequently transferred from DEASER to █ on 2/8/2016, and then from █ to █ on 10/1/2016. The DROS form for the purported transfer from DEASER to █ contained the print of DEASER's right middle finger in the place where █ right thumbprint should have been.

AFFIDAVIT

18

| Firearm | Firearm Serial No. | Date of Purchase by ▉ | Purchased From | Fingerprint on DROS form in box titled "Purchaser's Right Thumbprint" | Date of Transfer from ▉ | Transferred from ▉ to |
|---|---|---|---|---|---|---|
| Sig Sauer JP & Sons, P320, 9 mm Pistol | 58B237220 | 6/14/17 | Capital Gun Club Family Shooting Centers | No DROS Form Obtained | 10/9/17 | Joseph DEASER |
| Kimber, Micro 9, 9 mm, Pistol | PB0069516 | 6/14/17 | Capital Gun Club Family Shooting Centers | No Pending DROS form/ "Approved" DROS Form is missing thumbprint | 10/31/17 | ▉R |
| Heckler & Koch, VP9 SK, 9 mm Pistol | 232008743 | 7/7/17 | Capital Gun Club Family Shooting Centers | No Pending DROS form/ "Approved" DROS Form is missing thumbprint | 10/9/17 | Joseph DEASER |
| Smith & Wesson, Shield, 45 Caliber Pistol | HUB4667 | 8/15/17 | Capital Gun Club Family Shooting Centers | Print on "Pending" DROS Form insufficient for analysis/ No print on "Approved" DROS form | 10/24/17 | ▉ |
| Sig Sauer JP & Sons, P320, 9 mm Pistol | 58B182755 | 8/15/17 | Capital Gun Club Family Shooting Centers | Deaser's Right Middle Finger on "Pending" DROS form/ No print on "Approved" DROS form | 10/24/17 | ▉ |

64. ▉ stated ▉ did not purchase or sell any of the 21 firearms on the chart above. ▉ stated ▉ was not aware of these transactions and was not familiar with any of the names of the individuals purchasing the firearms other than DEASER. ▉ indicated that ▉ did not give DEASER or ▉ any form of power of attorney to purchase firearms in ▉ name, although, for the firearms ▉ did purchase, DEASER offered to complete the requisite paperwork. ▉ also stated that ▉ had not seen any unfamiliar charges on ▉ credit card related to these transactions.

65.   ████████ was shown DROS forms for ██ purchase of the Heckler & Koch with serial number ending in 8743 and the Smith & Wesson Shield with serial number ending in 4667. ████████ indicated that the buyer's signatures appearing on the form was not ██ signature.

66.   I then showed ████████ a Form 4473 for the purchase of three firearms (a Benelli A400 shotgun with serial number ending in 294; a Kimber micro 9 Pistol with serial number ending in 9516; and a Sig Sauer Pistol with serial number ending in 2755) from Capital Gun Club. The firearms are listed in a chart in Section D in that order with the Benelli listed first. The Form 4473 indicates that the firearms were initially purchased by ████████ on June 14, 2017, and then given to ████████ ten (10) days later, on June 24, 2017. ████████ stated ██ bought the Benelli shotgun, but did not purchase either of the pistols.

67.   The DROS information (see chart above) for the Kimber indicates it was purchased by ████████ on June 14, 2017, but contrary to the Form 4473, the DROS information for the Sig Sauer (see chart above) indicates that it was not purchased by ████████ until August 15, 2017.

68.   Based on my training and experience, I know that it is common for FFL's engaged in illegal firearms trafficking to add firearms to the list in Section D of the Form 4473 after the buyer has completed the form.

69.   I then showed ████████ a Form 4473 for ██ purported purchase of firearms on 7/7/2017. The Form 4473 listed three firearms in Section D in the following order: (1) a Beretta A300 shotgun with serial number ending in 8977); (2) a Beretta A300 shotgun with serial number ending in 3822; and 3) a "H&K" 9mm pistol with serial number ending in 8743.  Of the three firearms, only the H&K pistol is a Non-Roster firearm. ████████ stated that ██ purchased the first two firearms (the Beretta firearms), but not the third. ████████ further stated that the handwriting and signatures appearing in the sections that must be completed by the buyer (Sections A and C) were not ██.

70.   Another Form 4473 shows that DEASER purchased the H&K with serial number 58B237220 and the Sig Sauer with serial number 58B237220 from ████████ on October 9, 2017. ████████ stated that ██ had never purchased or possessed these firearms and did not sell them to DEASER.

71.   I showed ████████ a Form 4473 for ██ purported purchase of three firearms on

1    August 15, 2017.  The following firearms were listed in Section D in the following order: 1) Smith and

2    Wesson with serial number ending in 4667; 2) a Sig Sauer with serial number ending in 2755; and 3) a

3    Beretta with serial number ending in 3793. ███████ stated █ purchased the Beretta but not the other

4    two firearms. █ also stated that the signatures in Sections A and C, which are to be completed by the

5    buyer, were not █

6    **Statement of Peace Officer** ██████████

7        72.    ██████████████ is a ████████████████████████████████

8    ████████████ and works at the ██████████████████. On January 11, 2018, CA

9    DOJ BOF SA Jesus Gutierrez, SA Gonzalez, and I met with ████████████, at a Starbucks, in

10    Roseville, California.

11        73.    ████████ stated █ had been a "silver" member at the Capital Gun Club for approximately

12    one year.  As a Silver member, ████████ pays Capital Gun Club a monthly membership fee, but the

13    $1,000 initiation fee was waived. ████████ indicated that the monthly membership fee was paid to

14    Capital Wildlife Education.

15        74.    ████████ initially stated that █ had purchased two handguns (an S&W Shield and a

16    Glock) from Capital Gun Club and still had both of them. ████████ indicated that █ personally signed

17    forms when purchasing these firearms.  After the interview, ████████ forwarded screenshots of two

18    receipts that █ received via email from Capital Gun Club (info@capitalgunclub.com) for █ firearm

19    purchases (shown below).  The receipts showed that ████████ purchased three firearms.

20               **THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK**

21

22

23

24

25

26

27

28

THANK YOU FOR YOUR BUSINESS

Capital Gun Club
2001 Opportunity Drive

Roseville CA 95678
www.capitalgunclub.com
9169655480

| Ticket # | 10104525 | User: | JDEASER |
|---|---|---|---|
| Customer: | | | |
| 6/26/2017 1:55:41 PM | | | |

| Item Description | Qty | Price | Total |
|---|---|---|---|
| S&W Shield LE | 1 | 375.00 | 375.00 |
| Subtotal | | | 375.00 |
| Total | | | 375.00 |
| Tender: | | | |
| VISA | | | 375.00 |
| XXXX | Swiped | APPROVAL 04942C | |
| Sale | MID 000051501790 | | |

Number of line items purchased: 1.

Return Policy: Merchandise may be
exchanged for a store credit within one
(1) month of the original purchase date,
or may be returned for a full refund
(except for guns and ammunition for which
all sales are FINAL) within fourteen (14)
days of the original purchase date when
accompanied by the original sales receipt.
All merchandise returned for exchange,
store credit or refund must be in perfect
saleable condition, in the original
packaging.

Capital Gun Club
2001 Opportunity Drive

Roseville CA 95678
www.capitalgunclub.com
9169655400

| Ticket # | 10104524 | User: | JDEASER |
|---|---|---|---|
| Customer: | | | |
| 6/26/2017 1:17:18 PM | | | |

| Item Description | Qty | Price | Total |
|---|---|---|---|
| Glock 43 LE | 1 | 405.00 | 405.00 |
| DROS | 1 | 30.00 | 30.00 |
| S&W Shield LE | 1 | 375.00 | 375.00 |
| Subtotal | | | 810.00 |
| Total | | | 810.00 |
| Tender: | | | |
| VISA | | | 810.00 |
| XXXX | Swiped | APPROVAL 09722C | |
| Sale | MID 00051501790 | | |

Number of line items purchased: 3.

Return Policy: Merchandise may be
exchanged for a store credit within one
(1) month of the original purchase date,
or may be returned for a full refund
(except for guns and ammunition for which
all sales are FINAL) within fourteen (14)
days of the original purchase date when
accompanied by the original sales receipt.
All merchandise returned for exchange,
store credit or refund must be in perfect
saleable condition, in the original
packaging.

75.   In a follow-up interview, after ▮ sent the receipts, ▮ confirmed that ▮ had purchased all three firearms listed on the above receipts.

76.   ▮ further indicated that ▮ had sold one firearm at Capital Gun Club (bolded in the chart below), a firearm ▮ originally purchased from Right to Bear Arms in Orangevale, California. ▮ took the firearm to DEASER for ▮ to sell, but when ▮ followed up, DEASER told ▮ that a former employee was not running things properly and the firearm came up missing.  In a subsequent interview on March 21, 2018, ▮ stated that after consistently inquiring with DEASER about the firearm, ▮ was given a $350.00 check from Capital Gun Club Family Shooting Centers on January 24, 2018.

77.   I showed ▮ a copy of ▮ ID Card, which was obtained from Capital Gun Club during the state inspection.  ▮ confirmed the card was ▮, and that ▮ had used the ID card to purchase firearms at Capital Gun Club.

78.   ▮ was asked if ▮ was familiar with any of the following firearm transactions, reflected in the DES system as being associated with ▮:

| Firearm | Firearm Serial No. | Date of Purchase by ▮ | Purchased from | Fingerprint on DROS form in box titled "Purchaser's Right Thumbprint" | Date of Transfer from ▮ | Transferred from ▮ to |
|---|---|---|---|---|---|---|
| Sig Sauer JP & Sons, 290RS, 9 mm Pistol | 26C045154 | 10/25/15 | Right to Bear Arms | N/A (Not purchased at Capital Gun Club) | 8/14/17 | ▮ |
| Kimber, Campguard, 10 mm Pistol | K585209 | 6/30/17 | Capital Gun Club Family Shooting Centers | Print on DROS Form insufficient for analysis | 8/7/17 | ▮ |
| Kimber, Micro 9, 9 mm, Pistol | PB0075581 | 6/30/17 | Capital Gun Club Family Shooting Centers | No DROS Form obtained | 8/29/17 | ▮ |
| Kimber, Super Jagare, 10 mm Pistol | K585971 | 7/21/17 | Capital Gun Club Family Shooting Centers | "Approved" DROS Form is missing thumbprint | 8/29/17 | ▮ |
| Le Baer Custom Inc, Premier, 10 mm Pistol | LB46084 | 7/21/17 | Capital Gun Club Family Shooting Centers | "Approved" DROS Form is missing thumbprint | 8/29/17 | ▮ |

79.     ▮ indicated that other than the Sig Sauer (bolded in the chart above), ▮ did not purchase or sell any of the firearms listed above and was not aware of the transactions. ▮ further stated that ▮ was not familiar with the individuals purchasing the firearms. ▮ stated that ▮ was in ▮ on 8/7/2017, the date the Kimber firearm was sold to ▮ The DROS form for the sale of the Kimber from ▮ to ▮ has DEASER's right middle fingerprint in the place designated for the buyer's (▮) thumbprint.

80.     ▮ was then shown the DROS forms relating to ▮ purchase of the Kimber Super Jagare with serial number K585971 and the Le Baer Custom Inc. with serial number LB46084. ▮ indicated the buyer's signatures on the forms, which purported to be ▮, were not ▮ signatures.

81.     ▮ stated that ▮ did not give DEASER or ▮ any form of power of attorney to purchase firearms in ▮ name.

1  **Statement of Peace Officer** █████ █████.

2      82.   █████████ is a █████████████████████████ Officer.  On

3  January 11, 2018, CA DOJ BOF SA Jesus Gutierrez, SA Gonzalez, and I met with █████ at █

4  █████, in Roseville, California.

5      83.   █████ stated █████████ joined Capital Gun Club as "Silver" members when the

6  club opened in mid-2013.

7      84.   CA DOJ SA Gonzalez asked █████████ if █ had ever purchased firearms from Capital

8  Gun Club. █████ stated █had purchased in the ballpark of six (6) to ten (10) firearms from

9  Capital Gun Club. █████████ signed forms and showed identification when making purchases.  After

10 the interview █████ provided a █████ credit card statement showing two charges for the purchase

11 of firearms from "Capital Gun Club Roseville CA" on January 8, 2015, in the amounts of $1,124.29 and

12 $615.86. █████ stated █had sold only one (1) of the handguns █had purchased at Capital Gun

13 Club and still had the other firearms.

14     85.   I showed █████████ a copy of his █████ ID Card, which was found at Capital Gun

15 Club during the state inspection. █████████ confirmed the card was █ and stated █ had used the ID

16 card to purchase firearms at Capital Gun Club.

17     86.   █████████ was asked if █ was familiar with the following firearm transactions, reflected

18 in the DES system as associated with █████████:

| Firearm | Firearm Serial No. | Date of Purchase by ████ | Purchased from | Fingerprint on DROS form in box titled "Purchaser's Right Thumbprint" | Date of Transfer from ████ | Transferred from ████ to |
|---------|-----------|---------|---------|---------|---------|---------|
| Glock, 43, 9 mm, Pistol | ZVS269 | 7/20/15 | Capital Gun Club Family Shooting Centers | Print on DROS Form insufficient for analysis | 8/22/15 | Joseph DEASER |
| Glock, 42, 380 Caliber, Pistol | ABHT630 | 8/6/15 | Capital Gun Club Family Shooting Centers | DEASER's right middle finger | 8/22/15 | Joseph DEASER |

AFFIDAVIT                                      24

| Firearm | Firearm Serial No. | Date of Purchase by ▓ | ▓ Purchased from | Fingerprint on DROS form in box titled "Purchaser's Right Thumbprint" | Date of Transfer from ▓ | Transferred from ▓ to |
|---|---|---|---|---|---|---|
| Sig Sauer JP & Sons, 220R5, 10 mm Pistol | 37B034948 | 2/4/16 | Capital Gun Club Family Shooting Centers | Print on DROS Form insufficient for analysis | 2/17/16 | ▓ |
| Wesson Firearms Co, Razorback, 10 mm Pistol | 1506749 | 2/4/16 | Capital Gun Club Family Shooting Centers | Print on DROS Form insufficient for analysis | 2/17/16 | ▓ |
| Regent, M9, 9 mm Pistol | M9150527 | 2/4/16 | Capital Gun Club Family Shooting Centers | Print on DROS Form insufficient for analysis | 2/17/16 | ▓ |
| **Glock, 43, 9 mm, Pistol** | **ZXW910** | **2/4/16** | **Capital Gun Club Family Shooting Centers** | **Print on DROS Form insufficient for analysis** | **2/24/17** | ▓ |
| Wesson Firearms Co, Guardian, 45 Caliber Pistol | 1404832 | 5/2/16 | Capital Gun Club Family Shooting Centers | DEASER's Right Middle Finger | 11/18/16 | ▓ |
| Wesson Firearms Co, Razorback, 10 mm Pistol | 1506784 | 9/10/16 | Capital Gun Club Family Shooting Centers | DEASER's Right Middle Finger | 11/18/16 | ▓ |
| Smith & Wesson, Shield, 45 Caliber Pistol | HDV3156 | 11/18/16 | Capital Gun Club Family Shooting Centers | Print on DROS Form insufficient for analysis | 1/13/17 | ▓ |
| Kimber, Micro 9, 9 mm Pistol | PB0029807 | 11/18/16 | Capital Gun Club Family Shooting Centers | DEASER's Right Middle Finger | 1/13/17 | Joseph DEASER |
| Heckler & Koch, VP9 SK, 9 mm Pistol | 232014215 | 9/11/17 | Capital Gun Club Family Shooting Centers | DEASER's Right Middle Finger on "Pending" DROS form/ No print on "Approved" form | 10/11/17 | ▓ |

| Firearm | Firearm Serial No. | Date of Purchase by ▮ | Purchased from | Fingerprint on DROS form in box titled "Purchaser's Right Thumbprint" | Date of Transfer from ▮ | Transferred from ▮ to |
|---|---|---|---|---|---|---|
| Heckler & Koch, VP9, 9 mm Pistol | 224210521 | 9/11/17 | Capital Gun Club Family Shooting Centers | DEASER's Right Middle Finger on "Pending" DROS form/ No print on "Approved" DROS form | 12/15/17 | ▮ |

87. ▮ stated that ▮ purchased only one (1) of the Non-Roster handguns identified above, the Glock, 43, 9 mm, Pistol, bearing Serial Number ZXW910. ▮ indicated that ▮ purchased the firearm on 2/4/2016 and transferred it to ▮ at Capital Gun Club, on 2/24/2017.

▮ stated ▮ was

88. ▮ stated ▮ never purchased, sold, or was aware of the remaining eleven (11) firearm transactions. ▮ was not familiar with any of the individuals purchasing the firearms other than DEASER.

89. ▮ was then shown two DROS forms each for the purchase of a Heckler & Koch firearm, serial numbers 232014215 and 224210521. ▮ indicated that the buyer's signatures, which purported to be ▮ signatures, were not ▮

90. ▮ stated that ▮ did not give DEASER or ▮ any form of power of attorney to purchase firearms in ▮ name. ▮ stated ▮ has not noticed any unfamiliar charges relating to these purchases on ▮ credit card statements.

**Statement of Peace Officer** ▮

91. ▮ is ▮. On January 16, 2018, CA DOJ BOF SA Gonzalez and I met with ▮ at ▮ n Sacramento, California.

92. ▮ stated that approximately one year ago, ▮ co-worker, ▮, introduced him to DEASER at Capital Gun Club. ▮ never became a member of Capital Gun Club, because membership prices were costly.

AFFIDAVIT                                   26

1    93.    █████ stated █ had purchased one (1) handgun (a Smith and Wesson Shield) and

2  one (1) rifle from Capital Gun Club. █████ indicated that █ signed forms and provided a

3  thumbprint once. █████ stated █ had never sold or transferred any firearms through Capital Gun

4  Club and still had both the handgun and rifle █ had purchased from Capital Gun Club.  DES records

5  show █████ purchased two firearms (a Smith & Wesson Shield and a Savage Arms Corp.) on May

6  24, 2016, and there is no record of them being subsequently transferred or sold through any of FFLs

7  conducting business at 2001 Opportunity Drive.

8    94.    I showed █████ a copy of █████ ID Card, which was found at Capital Gun

9  Club during the state inspection. █████ confirmed the card was █ and stated █ used the ID card

10  to purchase firearms at Capital Gun Club.

11    95.    █████ was asked if █ purchased, sold, or was aware of the following six (6)

12  firearm transactions, reflected in the DES system as being associated with █████:

| Firearm | Firearm Serial No. | Date of Purchase by █████ | Purchased from | Fingerprint on DROS form in box titled "Purchaser's Right Thumbprint" | Date of Transfer from █████ | Transferred from █████ to |
|---|---|---|---|---|---|---|
| Glock, 43, 9 mm Pistol | BBUH007 | 6/29/16 | Capital Gun Club Family Shooting Centers | DEASER's Right Index Finger | 8/15/16 | ████ |
| Glock, 43, 9 mm Pistol | BBYR525 | 6/29/16 | Capital Gun Club Family Shooting Centers | DEASER's Right Thumb Print | 8/16/16 | ████ |
| Sturm Ruger, P45MK, 22 Caliber Pistol | 39152170 | 6/29/16 | Capital Gun Club Family Shooting Centers | DEASER's Right Middle Finger | 8/26/16 | ████ |
| Coonan Arms, Compact, 357 Caliber Pistol | CJB1897 | 11/16/16 | Capital Gun Club Family Shooting Centers | DROS Form not obtained | 1/17/17 | ████ |

| Firearm | Firearm Serial No. | Date of Purchase by ▮ | ▮ Purchased from | Fingerprint on DROS form in box titled "Purchaser's Right Thumbprint" | Date of Transfer from ▮ | Transferred from ▮ to ▮ |
|---------|-------------------|------------------------|-------------------|------------------------------------------------------------------------|-------------------------|--------------------------|
| Smith & Wesson, Shield, 45 Caliber Pistol | HDV3356 | 11/16/16 | Capital Gun Club Family Shooting Centers | DEASER's Right Middle Finger | 2/8/17 | ▮ |
| Kimber, Micro 9, 9 mm Pistol | PB0033191 | 11/16/16 | Capital Gun Club Family Shooting Centers | Print on "Pending" DROS form insufficient for analysis/ No print on "Approved" DROS form | 4/11/17 | ▮ |

96.     ▮ said ▮ had no knowledge of the above identified transactions and was not familiar with the names or individuals to whom the guns were sold.

**Statement of Peace Officer ▮**

97.     ▮ is ▮ and currently works at ▮



On January 16, 2018, CA DOJ SA Jesus Gutierrez and SA Gonzalez met with ▮ in Roseville, California.

98.     ▮ stated ▮ never became a member of Capital Gun Club, because membership prices were expensive, but stated ▮ had purchased and sold one (1) handgun from Capital Gun Club.

99.     SA Gonzalez showed ▮ a copy of ▮ ID Card, which was found at Capital Gun Club during the state inspection. ▮ confirmed the card was ▮ and stated ▮ had used the ID card to purchase a firearm at Capital Gun Club.

100.     SA Gonzalez asked ▮ if ▮ had purchased, sold, or was aware of the following five (5) firearm transactions reflected in DES system as being associated with ▮

| Firearm | Firearm Serial No. | Date of Purchase by ▊ | Purchased from | Fingerprint on DROS form in box titled "Purchaser's Right Thumbprint" | Date of Transfer from ▊ | Transferred from ▊ to |
|---|---|---|---|---|---|---|
| Heckler & Koch, VP9 SK, 9 mm Pistol | 232014222 | 9/22/17 | Capital Gun Club Family Shooting Centers | DROS form is missing thumbprint | 10/31/17 | ▊ |
| **Glock, 43, 9 mm Pistol** | **BFGT536** | **9/22/17** | Capital Gun Club Family Shooting Centers | **DROS form is missing thumbprint** | **11/8/17** | ▊ |
| Smith & Wesson, MP9 Compact 2.0, 9 mm Pistol | NBC9580 | 10/24/17 | Capital Gun Club Family Shooting Centers | DEASER's Right Middle Finger | 11/8/17 | Joseph DEASER |
| Springfield Armory, XDS, 9 mm Pistol | S4946227 | 10/24/17 | Capital Gun Club Family Shooting Centers | DEASER's Right Middle Finger | 12/5/17 | ▊ |
| Smith & Wesson, MP9 Compact 2.0, 9 mm | NBC9829 | 10/24/17 | Capital Gun Club Family Shooting Centers | DROS form is missing thumbprint | 12/5/17 | ▊ |

101.   ▊ said ▊ only knew about one of the purchases (the transaction bolded in the chart above). ▊ indicated ▊ purchased a Glock, 43, 9 mm, Pistol on 9/22/2017 and transferred it to ▊ at Capital Gun Club on 11/8/2017. ▊ stated ▊ ▊ was ▊ who worked at ▊ located in Rocklin, California. ▊ indicated that ▊ had no knowledge of the other transactions, and was not familiar with any of the other individuals involved in the transactions. ▊ has not noticed any unfamiliar charges relating to these transactions on ▊ credit card statements.

102.   ▊ was shown DROS forms for each of the transactions. ▊ stated that none of the signatures on the forms were ▊, not even the signature on the DROS form related to the Glock firearm ▊ purchased. ▊ stated DEASER offered to complete the documents necessary for ▊

1 | purchase of the Glock.

2 | 103. An ATF Form 4473 dated October 24, 2017, lists ▇▇▇▇ as the purchaser of the last

3 | three firearms listed in the chart above, firearms that ▇▇▇▇ said ▇ did not purchase, and DEASER as

4 | the salesperson. ▇▇▇▇ stated ▇ did not give DEASER or ▇▇▇▇ any form of power of attorney to

5 | purchase the handguns in ▇▇ name.

6 | 104. ▇▇▇▇ further indicated that on January 15, 2018, during an appointment with ▇▇▇▇

7 | ▇▇▇▇, who ▇▇▇▇▇▇▇▇ Capital Gun Club,

8 | ▇▇▇▇ handed ▇▇▇▇ a black case with a Heckler & Koch, VP9 SK, 9 mm Pistol S/N

9 | 232014223. ▇▇▇▇ told ▇▇▇ that the gun had been mistakenly placed in ▇▇▇▇

10 | name, but that they caught it mid transfer to someone else. ▇▇▇▇ stated that since the

11 | pistol was in ▇▇▇ name, DEASER decided to gift it to ▇ ▇▇▇ stated ▇ did not fill out any

12 | required documents to take possession or ownership of the firearm.

13 | **Non-Roster Firearm Transactions Involving Peace Officer** ▇▇▇▇

14 | 105. Information obtained from the Review of the documentation obtained during the state

15 | inspection of Capital Gun Club revealed two additional transactions involving Non-Roster firearms and

16 | another ▇▇▇▇ officer, ▇▇▇▇ (DOB: XX/XX/▇▇:

| Firearm | Firearm Serial No. | Date of Purchase by ▇▇▇ | Purchased from | Fingerprint on DROS form in box titled "Purchaser's Right Thumbprint" | Date of Transfer from ▇▇▇ | Transferred from ▇▇▇ to |
|---------|--------------------|-----------|----------------|-----------------------------------------------------------|------------------|-------------------------|
| Smith & Wesson, MP9, 9 mm Pistol | HDK4897 | 3/15/17 | Capital Gun Club Family Shooting Centers | Print on DROS Form insufficient for analysis | 4/18/17 | ▇▇▇▇ |
| Sig Sauer JP & Sons, P230, 9mm pistol | 58B182614 | 3/15/17 | Capital Gun Club Family Shooting Centers | DROS form is missing thumbprint | 4/8/17 | Joseph DEASER |

26 | 106. ▇▇▇▇ was not interviewed about these transactions.

27 | 107. The fingerprint on the DROS form relating to the transfer of the Smith & Wesson from

28 | ▇▇▇ to ▇▇▇ has a print identified as having been made by DEASER's right middle finger.

AFFIDAVIT                                    30

**Non-Roster Handguns Purchased in** ▮▮▮▮▮▮▮ **Name**

108.    Two Non-Roster firearms were also purchased on December 6, 2016, from Capital Gun Club Family Shooting Center in ▮▮▮▮▮▮ name: (1) a Sig Sauer JP & Sons, P238, 380 Caliber Pistol with Serial Number 27B293573 and (2) a Sig Sauer JP & Sons, P238, 380 Caliber Pistol with Serial Number 27B293469. ▮▮▮▮▮ is not a sworn peace officer. However, when the Sig Sauer firearms were purchased, the DROS forms indicated that the purchaser was a sworn peace officer.

109.    Both handguns were subsequently transferred to ▮▮▮▮▮▮ on 4/17/2017.

**Non-Roster Handguns Registered to DEASER**

110.  . According to the Animated Firearms System (AFS), which shows all firearms transactions for any given individual, the following Non-Roster handguns were registered to DEASER as of March 27, 2018:

|    | Make of Firearm | Model of Firearm | Caliber | Serial Number |
|----|-----------------|------------------|---------|---------------|
| 1  | SMITH AND WESSON | MP9 Compact 20 | 9 | NBC9580 |
| 2  | SAUER, J. P., & SONS | P320 | 9 | 58B237220 |
| 3  | HECKLER & KOCH | VP9 SK | 9 | 232008743 |
| 4  | SAUER, J. P., & SONS | P320 | 9 | 58B182614 |
| 5  | KIMBER | Micro | 9 | PB0029807 |
| 6  | SMITH AND WESSON | Shield | 45 | HDV3156 |
| 7  | WESSON FIREARMS CO | Razorback | 10 | 1504129 |
| 8  | GLOCK,INC | 43 | 9 | ZXW912 |
| 9  | HECKLER & KOCH | P30L | 9 | 213018537 |
| 10 | GLOCK,INC | 43 | 9 | ZVS269 |
| 11 | GLOCK,INC | 42 | 380 | ABHT630 |
| 12 | WESSON FIREARMS CO | Silverback | 10 | 1504734 |

1 **Description of Capital Gun Club**

2      111.    CA DOJ Field Representatives Robin Brown and Sherry Carter from the DOJ BOF

3 Training, Information and Compliance Section (TICS), took photographs during their inspection and

4 provided a description of Capital Gun Club. They stated that Capital Gun Club is a two story building

5 with video surveillance. On the first level, in relevant part, there is a main area with a gun counter

6 where transactions are conducted; various rooms including an office for DEASER; and a shooting range.

7 In the center of the main area of the first floor there are approximately 8 black lockers, depicted in

8 Attachment A, that are used by private club members. In addition, there are three large black safes;

9 according to DEASER's representations to the Field Representatives, one is used by the gunsmith, one

10 is used by a third-party, and the third was empty and unlocked. The second level consists of three

11 offices. The Field Representatives observed two computers, one at the gun counter, and one in

12 DEASER's office on the first level.

13      112.    The Field Representatives indicated that DEASER does not keep an inventory of firearms

14 on hand, but instead orders firearms as they are requested by customers.

15      **V.**      **COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

16      113.    As described above and in Attachment B, this application seeks permission to search for

17 records that might be found on the PREMISES, in whatever form they are found. One form in which

18 the records might be found is data stored on a computer's hard drive or other storage media. The term

19 "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data

20 processing devices performing logical, arithmetic, or storage functions, including desktop computers,

21 notebook computers, mobile phones, tablets, server computers, and network hardware. A storage

22 medium is any physical object upon which computer data can be recorded. Examples include hard

23 disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media. Thus, the

24 warrant applied for would authorize the seizure of computers and electronic storage media or,

25 potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

26      114.    *Probable cause.* I submit that if a computer or storage medium is found on the

27 PREMISES, there is probable cause to believe those records will be stored on that computer or storage

28 medium, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

e. Based on actual inspection of other evidence related to this investigation including evidence that firearm transaction information is entered into DES, the internet-based DROS system; and evidence and witness statements that there computers are used in

1  connection with the payment and processing of firearm transactions, I am aware that

2  computer equipment was used in furtherance of the crimes being investigated. Based on

3  the nature of the business, the record keeping requirements, and evidence to date, there is

4  reason to believe that there is a computer system currently located at the TARGET

5  LOCATION.

6  115.  *Forensic evidence.*  As further described in Attachment B, this application seeks

7  permission to locate not only computer files that might serve as direct evidence of the crimes described

8  on the warrant, but also for forensic electronic evidence that establishes how computers were used, the

9  purpose of their use, who used them, and when. There is probable cause to believe that this forensic

10 electronic evidence will be on any storage medium at the TARGET LOCATION because:

11  a.  Data on the storage medium can provide evidence of a file that was once on the storage

12  medium but has since been deleted or edited, or of a deleted portion of a file (such as a

13  paragraph that has been deleted from a word processing file). Virtual memory paging

14  systems can leave traces of information on the storage medium that show what tasks and

15  processes were recently active. Web browsers, e-mail programs, and chat programs store

16  configuration information on the storage medium that can reveal information such as

17  online nicknames and passwords. Operating systems can record additional information,

18  such as the attachment of peripherals, the attachment of USB flash storage devices or

19  other external storage media, and the times the computer was in use. Computer file

20  systems can record information about the dates files were created and the sequence in

21  which they were created, although this information can later be falsified.

22

23  b.  As explained herein, information stored within a computer and other electronic storage

24  media may provide crucial evidence of the "who, what, why, when, where, and how" of

25  the criminal conduct under investigation, thus enabling the United States to establish and

26  prove each element or alternatively, to exclude the innocent from further suspicion. In

27  my training and experience, information stored within a computer or storage media (e.g.,

28  registry information, communications, images and movies, transactional information,

1    records of session times and durations, internet history, and anti-virus, spyware, and

2    malware detection programs) can indicate who has used or controlled the computer or

3    storage media. This "user attribution" evidence is analogous to the search for "indicia of

4    occupancy" while executing a search warrant at a residence. The existence or absence of

5    anti-virus, spyware, and malware detection programs may indicate whether the computer

6    was remotely accessed, thus inculpating or exculpating the computer owner. Further,

7    computer and storage media activity can indicate how and when the computer or storage

8    media was accessed or used. For example, as described herein, computers typically

9    contains information that log: computer user account session times and durations,

10   computer activity associated with user accounts, electronic storage media that connected

11   with the computer, and the IP addresses through which the computer accessed networks

12   and the internet. Such information allows investigators to understand the chronological

13   context of computer or electronic storage media access, use, and events relating to the

14   crime under investigation. Additionally, some information stored within a computer or

15   electronic storage media may provide crucial evidence relating to the physical location of

16   other evidence and the suspect. For example, images stored on a computer may both

17   show a particular location and have geolocation information incorporated into its file

18   data. Such file data typically also contains information indicating when the file or image

19   was created. The existence of such image files, along with external device connection

20   logs, may also indicate the presence of additional electronic storage media (e.g., a digital

21   camera or cellular phone with an incorporated camera). The geographic and timeline

22   information described herein may either inculpate or exculpate the computer user. Last,

23   information stored within a computer may provide relevant insight into the computer

24   user's state of mind as it relates to the offense under investigation. For example,

25   information within the computer may indicate the owner's motive and intent to commit a

26   crime (e.g., internet searches indicating criminal planning), or consciousness of guilt

27   (e.g., running a "wiping" program to destroy evidence on the computer or password

28   protecting/encrypting such evidence in an effort to conceal it from law enforcement).

AFFIDAVIT                                35

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

116.  *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a.  The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.  Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.  Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

117.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by

1 | the warrant.

2 |     118.  The business commonly known as Capital Gun Club is a functioning company that

3 | conducts legitimate business.  The seizure of the Company's computers may limit the Company's ability

4 | to conduct its legitimate business.  As with any search warrant, I expect that this warrant will be

5 | executed reasonably.  Reasonable execution will likely involve conducting an investigation on the scene

6 | of what computers, or storage media, must be seized or copied, and what computers or storage media

7 | need not be seized or copied.  Where appropriate, officers will copy data, rather than physically seize

8 | computers, to reduce the extent of disruption.  If employees of the Company so request, the agents will,

9 | to the extent practicable, attempt to provide the employees with copies of data that may be necessary or

10 | important to the continuing function of the Company's legitimate business.  If, after inspecting the

11 | computers, it is determined that some or all of this equipment is no longer necessary to retrieve and

12 | preserve the evidence, the government will return it.

13 |                   **VI.**    **CONCLUSION**

14 |     119.  Accordingly, for the foregoing reasons, I believe that there is probable cause that

15 | evidence and fruit of, and property used to commit the following crimes:  18 U.S.C. §§ 922(b)(5)

16 | (Failure by Federally Licensed Dealer to Keep Proper Records), 922(m) (making a false entry or failing

17 | to make entry in records by Federal Firearms Dealer), 924(a)(3) (knowing making of false statements by

18 | licensee), 1028(a)(7) (identity theft), 1028A (aggravated identity theft), 1029(a)(5) (access device

19 | fraud), 1341 (mail fraud) and 1343 (wire fraud), as described in Attachment B, will be found at 2001

20 | Opportunity Drive, Roseville, California, as further described in Attachment A.

21 |                 **VII.**    **REQUEST FOR SEALING**

22 |     120.  It is respectfully requested that this Court issue an order sealing, until further order of the

23 | Court, all papers submitted in support of this application, including the application and search warrant.  I

24 | believe that sealing this document is necessary because the items and information to be seized are

25 | relevant to an ongoing investigation into the criminal organizations as not all of the targets of this

26 | investigation will be searched at this time.  Based upon my training and experience, I have learned that

27 | online criminals actively search for criminal affidavits and search warrants via the Internet, and

28 | disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online.

1  Premature disclosure of the contents of this affidavit and related documents may have a significant and

2  negative impact on the continuing investigation and may severely jeopardize its effectiveness.

3

4                                              Respectfully submitted,

5

6                                              Daniel Bietz
                                               Special Agent
7                                              U.S. Department of Alcohol, Tobacco, Firearms,
                                               and Explosives
8

9
   Subscribed and sworn to before me on:   4-2-2018
10

11

12  The Honorable Edmund F. Brennan
    UNITED STATES MAGISTRATE JUDGE
13

14

15

16  Approved as to form by
17  AUSA SHELLEY D. WEGER

18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A

### *Description of the Location to be Searched*

The premises to be searched is located at 2001 Opportunity Drive, Roseville, California 95678, which is the location of a business commonly known as Capital Gun Club. The premises to be searched is a two (2) story commercial building, located on the south-east corner of Opportunity Drive and Vineyard Road in Roseville, CA. The façade of the location is tan in color with blue trim and a red color roof. The building contains six (6) white columns in front of the building supporting two (2) awnings. The name "Capital Gun Club" is clearly visible in blue embossed letters, located below the second level roof awning, above the entrance to the business. The address numbers "2001" are clearly visible black numerals located on the tan façade of the building, to the right of the front door. The front door faces west towards Opportunity Drive. The front door of the business is brown wood color with a dark colored handle door knob. The front of the property is surrounded by an open commercial parking lot.

The search of the aforementioned premises shall include: ANY AND ALL safes, lockers, computers, and storage media, except those lockers and safes belonging exclusively to private members of Capital Gun Club other than Joseph DEASER and ███████████

Below is a photograph of the premises to be searched:



Below are a photographs of the approximately eight (8) lockers (left photograph) and 3 safes (right photograph) used by private members of Capital Gun Club that are explicitly **EXCLUDED from this search.**

 

## **ATTACHMENT B**

1.      All evidence, in whatever form, that relates to or constitutes a violation of 18 U.S.C. §§ 922(b)(5) (Failure by Federally Licensed Dealer to Keep Proper Records), 922(m) (making a false entry or failing to make entry in records by Federal Firearms Dealer), 924(a)(3) (knowing making of false statements by licensee), 1028(a)(7) (identity theft), 1028A (aggravated identity theft), 1029(a)(5) (access device fraud), 1341 (mail fraud) and 1343 (wire fraud), including:

    a.  All documents, records, notes, data and information relating to the transfer,

        purchase, distribution, or sale of firearms, including but not limited to:

           i.  ATF Forms 4473;

          ii.  California Dealer's Record of Sale (DROS) forms;

        iii.  Acquisition and Disposition (A&D book) book or its equivalent;

         iv.  Data from the Silver computer program;

          v.  Communications, including e-mail, and notes;

         vi.  Records, notes, and payments relating to the shipment of firearms;

        vii.  Shipping records, labels, or packing.

    b.  All records and information relating to payments made or received in connection

        with the purchase or sale of firearms including but not limited to details of credit

        or debit card transactions and wire transfers; checks; receipts (including emailed

        receipts); invoices; spreadsheets; QuickBooks, and other bookkeeping or

        accounting software; data from the Silver computer program; and stored credit or

        debit card numbers;

    c.  All identification cards and documents, including law enforcement identification

        and government issued identification such as Driver's Licenses, all copies of

        identification cards and documents, and all information relating to such

        identification cards.

d. Letters from law enforcement agencies on agency letterhead concerning the transfer, purchase or sale of firearms, and any other similar records or documents including copies of such documents;

e. Any letters, sworn statements, or return receipts for registered or certified mail maintained pursuant to 18 U.S.C. § 922(c).

f. Surveillance video footage;

g. E-mails, communications, notes, and other any other papers, relating to the transfer, sale or purchase of firearms, or payments made or received for firearms;

h. Non-Roster firearms registered to Joseph DEASER, including but not limited to:

|  | Make of Firearm | Model of Firearm | Caliber | Serial Number |
|---|---|---|---|---|
| 1 | SMITH AND WESSON | MP9 Compact 20 | 9 | NBC9580 |
| 2 | SAUER, J. P., & SONS | P320 | 9 | 58B237220 |
| 3 | HECKLER & KOCH | VP9 SK | 9 | 232008743 |
| 4 | SAUER, J. P., & SONS | P320 | 9 | 58B182614 |
| 5 | KIMBER | Micro | 9 | PB0029807 |
| 6 | SMITH AND WESSON | Shield | 45 | HDV3156 |
| 7 | WESSON FIREARMS CO | Razorback | 10 | 1504129 |
| 8 | GLOCK,INC | 43 | 9 | ZXW912 |
| 9 | HECKLER & KOCH | P30L | 9 | 213018537 |
| 10 | GLOCK,INC | 43 | 9 | ZVS269 |
| 11 | GLOCK,INC | 42 | 380 | ABHT630 |
| 12 | WESSON FIREARMS CO | Silverback | 10 | 1504734 |

      i.   Records and information relating to any e-mail account, including but not limited to info@capitalgunclub.com, used in connection with firearm transactions.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

A Non-Roster firearm is any handgun that does not appear on the State of California's list of approved handguns, which may be found at https://www.oag.ca.gov/firearms/certguns.

    2.    Computers or storage media used as a means to commit the violations described above, including but not limited to those used to: (1) submit information to the electronic DROS system (DES);(2) conduct credit card transactions or wire transfers relating to the purchase or sale of firearms; (3) email firearm transactions receipts; and (4) track the purchase, payment, shipment, sale, receipt and transfer of firearms.

    3.    For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

      a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.  contextual information necessary to understand the evidence described in this attachment.

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**FILED**

APR 0 6 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
    DEPUTY CLERK

In the Matter of the Search of )
)
) Case No.
3625 Arden Villa Place, Roseville, CA 95747 )   **2 1 8 - SW   0 3 2 4**   AC
)
)

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____ Eastern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _4 / 18 / 18_ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern
District of California.

☐  Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
☐   for _____ days *(not to exceed 30)* ☐  until, the facts justifying, the later specific date of _____.

Date and time issued: _4 / 4 /18   3:35 pm_ _____
                                                                              *Judge's signature*

City and state:      Sacramento, California _____      Allison Claire, U.S. Magistrate Judge
                                                                         *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.:<br>7460 75-18-0024 | Date and time warrant executed:<br>04/4/18 | Copy of warrant and inventory left with:<br>LEFT ON KITCHEN COUNTER |
| Inventory made in the presence of :<br>AJERRY DONN | | |
| Inventory of the property taken and name of any person(s) seized: | | |

_SEE ATTACHED LIST —

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

Subscribed, sworn to, and returned before me this date.

_____
Signature of Judge

4/6/2018
Date

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Receipt for Property and Other Items**

| Page 2 of 2 | Case/Inspection Number 786055-18-0014 | Case/Inspection Title | | Office Sacramento |
|---|---|---|---|---|

| Taken from: *(name, title, address, if appropriate)* <br> Joseph Deaser <br> 3635 Arden Villa Pl <br> Roseville, CA 95747 | Recipient: *(name, title, address, if appropriate)* |
|---|---|

| Location of Transfer or Seizure <br> same as above | Basis for Transfer or Seizure of Items: <br> Warrant |
|---|---|

| Amount or Quantity | Description of Item(s) |
|---|---|
| 1 | Dan Wesson, model Silverback, SN# 1504734, 10mm - with 2 magazines - inside of Dan Wesson case - Found in garage safe |
| 1 | Sig Sauer, model P320, SN# 58B237220, 9mm - with 3 magazines - inside Sig Sauer case - Found in garage safe |
| 1 | Sig Sauer, model P320, SN# 58B182614, 9mm - with 3 magazines - inside Sig Sauer case - Found in garage safe |
| 1 | Smith & Wesson, Model M&P Shield, 45 cal - with 2 magazines - inside Smith & Wesson Box - Found in garage safe. |
| 1 | Pink <sup>code</sup> Apple macbook laptop - Found in upstairs home office for ▮▮▮▮▮ - SN# C02S16MZH3QX |
| 1 | Apple macbook air in black case - SN# C1MRKRYWH3QF - Found on nightstand in downstairs master bedroom |

I hereby acknowledge receipt of the above item(s) into my custody.

| Received by: *(signature)* | | | Date |
|---|---|---|---|
| Transferred by: *(signature, if appropriate)* | Date | Witnessed by: *(signature)* | Date |

ATF Form 3400. 23
Revised March 2005

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Receipt for Property and Other Items

| Page 1 of 3 | Case/Inspection Number 98035-18-0024 | Case/Inspection Title | Office Sacramento |
|---|---|---|---|

| Taken from: *(name, title, address, if appropriate)*<br>Joseph Deaser<br>265 Arden Villa Pl<br>Roseville, CA 95747 | Recipient: *(name, title, address, if appropriate)* |
|---|---|

| Location of Transfer or Seizure<br>Same as above | Basis for Transfer or Seizure of Items:<br>Warrant |
|---|---|

| Amount or Quantity | Description of Item(s) |
|---|---|
| i | HK1, model VP9SK, SN # 232-008743, 9mm - 5 magazines - Inside HK case found in garage safe |
| 1 | HK, model P30L-V1, SN# 23-018537, 9mm - 2 magazines loaded with ammo- found in downstairs bedroom inside of a biometric safe |
| 1 | HK case for HK, model P30L-V1, SN# 23-018537 - found in garage safe |
| 1 | Kimber, model micro 9 raptor, SN # P30029807, 9mm - with 2 magazines - inside of Kimber box/case in garage safe |
| 1 | Dan Wesson, model Razorback, SN# 1504129, 10 mm - inside Dan Wesson case - Found in garage safe |
| 1 | Glock, model 43, SN# 25W912, 9mm- inside of glock case - with 2 magazines- Found in garage safe. |
| 1 | Case for Glock, model 42, 380 auto - Found in garage safe |
| 1 | Glock, model 42, 380 auto, SN# ABHT630, - with 4 loaded magazins + ammo rounds - Found in downstairs master bedroom closet |

I hereby acknowledge receipt of the above item(s) into my custody.

| Received by: *(signature)* | | | Date |
|---|---|---|---|
| Transferred by: *(signature, if appropriate)* | Date | Witnessed by: *(signature)* | Date |

G2O U.S. GOVERNMENT PRINTING OFFICE: 2007-330-138/31102

ATF Form 3400. 23
Revised March 2005

1
2

**ATTACHMENT A**

3    The premises to be searched is located at 3625 Arden Villa Place, Roseville, CA 95747 in Placer
County.  It is a two story house, located on the south side of Arden Villa Place entering the Cul-de-Sac.
4    The façade of the residence is tan in color with beige trim and a brown color roof.  The house contains
two stone pillars in front of the house supporting the roof.  The address numbers "3625" are clearly
5    visible in white embossed numerals located to the right of the garage with "Arden Villa Place" directly
below it.  The front door faces north towards Arden Villa Place.  The front door of the house is a brown
6    wood color.  The garage is described as a tan metal roll-up garage door.
7
8    Also to be searched are ANY and ALL rooms, attics, basements, cellars, lofts, storage areas,
safes, lockers, vaults, lock-boxes, garages, storage rooms, outbuildings, and all other areas within the
9    curtilage.
10
A photograph of the premises to be searched appears below:
11
12
13
14    
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## ATTACHMENT B

1.     All evidence, in whatever form, that relates to or constitutes a violation of 18 U.S.C. §§ 922(b)(5) (Failure by Federally Licensed Dealer to Keep Proper Records), 922(m) (making a false entry or failing to make entry in records by Federal Firearms Dealer), 924(a)(3) (knowing making of false statements by licensee), 1028(a)(7) (identity theft), 1028A (aggravated identity theft), 1029(a)(5) (access device fraud), 1341 (mail fraud) and 1343 (wire fraud), including:

    a.  All documents, records, notes, data and information relating to the transfer, purchase, distribution, or sale of firearms, including but not limited to:

        i.  ATF Forms 4473;

        ii.  California Dealer's Record of Sale (DROS) forms;

        iii.  Acquisition and Disposition (A&D book) book or its equivalent;

        iv.  Data from the Silver computer program;

        v.  Communications, including e-mail, and notes;

        vi.  Records, notes, and payments relating to the shipment of firearms;

        vii.  Shipping records, labels, or packing.

    b.  All records and information relating to payments made or received in connection with the purchase or sale of firearms including but not limited to details of credit or debit card transactions and wire transfers; checks; receipts (including emailed receipts); invoices; spreadsheets; QuickBooks, and other bookkeeping or accounting software; data from the Silver computer program; and stored credit or debit card numbers;

    c.  All identification cards and documents, including law enforcement identification and government issued identification such as Driver's Licenses, all copies of identification cards and documents, and all information relating to such identification cards.

    d.  Letters from law enforcement agencies on agency letterhead concerning the transfer, purchase or sale of firearms, and any other similar records or documents including copies of such documents;

1

e.  Any letters, sworn statements, or return receipts for registered or certified mail maintained pursuant to 18 U.S.C. § 922(c).

f.  E-mails, communications, notes, and other any other papers, relating to the transfer, sale or purchase of firearms, or payments made or received for firearms;

g.  Non-Roster firearms registered to Joseph DEASER, including but not limited to:

|   | Make of Firearm | Model of Firearm | Caliber | Serial Number |
|---|---|---|---|---|
| 1 | SAUER, J. P., & SONS | P320 | 9 | 58B237220 |
| 2 | HECKLER & KOCH | VP9 SK | 9 | 232008743 |
| 3 | SAUER, J. P., & SONS | P320 | 9 | 58B182614 |
| 4 | KIMBER | Micro | 9 | PB0029807 |
| 5 | SMITH AND WESSON | Shield | 45 | HDV3156 |
| 6 | WESSON FIREARMS CO | Razorback | 10 | 1504129 |
| 7 | GLOCK,INC | 43 | 9 | ZXW912 |
| 8 | HECKLER & KOCH | P30L | 9 | 213018537 |
| 9 | GLOCK,INC | 42 | 380 | ABHT630 |
| 10 | WESSON FIREARMS CO | Silverback | 10 | 1504734 |

h.  Records and information relating to any e-mail account, including but not limited to info@capitalgunclub.com, used in connection with firearm transactions.

i.  Indicia of occupancy or use, to include telephone, utility, or other bills; address books; rental receipts or lease agreements; mortgage documents; mail; photographs; personal notes; and business documents including documents relating to Capital Gun Club, LLC;

1     Capital Gun Club Family Shooting Centers, LLC; Anarchy International; Anarchy

2     Armory; and Capital Wildlife & Nature Education Foundation

3

4     As used above, the terms "records" and "information" includes all forms of creation or storage,

5  including any form of computer or electronic storage (such as hard disks or other media that can store

6  data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any

7  photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures,

8  or photocopies).

9

10     A Non-Roster firearm is any handgun that does not appear on the State of California's list of

11  approved handguns, which may be found at https://www.oag.ca.gov/firearms/certguns.

12

13     2.     Computers or storage media used as a means to commit the violations described above,

14  including but not limited to those used to: (1) purchase, order, or sell firearms; (2) submit information to

15  the electronic DROS system (DES); (3) conduct credit card transactions or wire transfers relating to the

16  purchase or sale of firearms; (4) email firearm transactions receipts; and (5) track the purchase, payment,

17  shipment, sale, receipt and transfer of firearms.

18

19     3.     For any computer or storage medium whose seizure is otherwise authorized by this

20  warrant, and any computer or storage medium that contains or in which is stored records or information

21  that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

22

23     a.    evidence of who used, owned, or controlled the COMPUTER at the time the things

24     described in this warrant were created, edited, or deleted, such as logs, registry entries,

25     configuration files, saved usernames and passwords, documents, browsing history, user

26     profiles, email, email contacts, "chat," instant messaging logs, photographs, and

27     correspondence;

28

b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

4

l.   records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.   contextual information necessary to understand the evidence described in this attachment.

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.